The Indiana, Bloomington and Western Railway Company *v.* Leak.

No. 10,091.

THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY *v.* LEAK.

RAILROAD.—*Action Against for Stock Killed.*—*Fencing.*—Where an animal is killed by cars, having entered upon the railroad at a place not fenced on either side, but where it is practicable to fence only on one side, the railroad company is not liable under the statute.  R. S. 1881, sections 4025–4032.

From the Hendricks Circuit Court.

*C. W. Fairbanks, J. V. Hadley, E. G. Hogate* and *R. B. Blake*, for appellant.

*T. S. Adams*, for appellee.

FRANKLIN, C.—The only question presented and discussed by counsel in this case is whether the court erred in its conclusions of law upon the facts stated.   Appellee sued appellant for the value of a horse killed by the running of the cars on appellant's road.   The complaint was originally in two paragraphs, the first charging that the road at the point where the horse went upon the track was not securely fenced in, and the second charging negligence in the running of the cars.   The second paragraph was subsequently withdrawn, and the cause was submitted to the court on the first paragraph.   The court's conclusions of law and judgment were in favor of the appellee for the value of the horse.

The special findings upon which the court stated its conclusions of law are as follows:

"1st. The court finds that the plaintiff's horse was struck and killed by the locomotive of the defendant, while being run upon the railroad of the defendant, at the town of Lizton, in Hendricks county, Indiana, on the 20th day of September, 1881, and that the horse was of the value of $125.

"2d. Said town contains about 300 inhabitants, and at that time the defendant in the northern part of said town maintained, about six feet north of her main track, a switch or

side track about 1200 feet long; at a point about 100 feet west of the east end of the switch was a public highway, crossing the railroad; and at a point about 400 feet west of this highway a public street, running north through said town, crossed the railroad; both sides of the railroad between these two highways were occupied with residences, stores, warehouses and other buildings. At a point on the south side of the railroad, and about 20 feet east of the street crossing, was the defendant's station for receiving and discharging freights and passengers; immediately west of the street crossing, and south and adjoining the railroad, was an unenclosed, unoccupied strip of ground about 300 feet long and 125 feet wide, designated on subjoined plat by letter 'A.' West of this strip of ground, to a point 100 feet west of the west end of the switch, the defendant's right of way was unenclosed, except by a farmer's fence along the south line thereof. On the west side of said public street, south of the railroad, is one tier of lots laid off and occupied with buildings, and west of the tier of lots, and south of the railroad, the land is enclosed farm lands. On the north side of the railroad, and west of the street crossing about 200 feet, the defendant maintains stock-pens, designated on subjoined plat by letter 'B.' About 100 feet west of the stock-pens, and from 150 to 180 feet north of railroad, was a flouring mill in operation, and about 300 feet west of flouring mill was a saw-mill in operation, designated on said subjoined plat by letter 'C.' The space between the mills and railroad was used as a lumber yard, and by the public in loading wood, lumber and staves on defendant's cars for transportation.

"3d. The plaintiff's horse went upon the railroad from the south, at the northwest corner of the strip of ground marked on plat by letter 'A,' and about 300 feet west of the street crossing, and a little west of the middle of the side track, and was killed at a point 240 feet west of the point of going on, or at a point designated in plat by letter 'D.'

"4th. On the west line of the street crossing the defendant

could maintain cattle-guards, and on the south side of the railroad, west of the street crossing, could maintain a fence, without damage or inconvenience to itself or the public; but on the north side of the railroad could not erect or maintain a fence at any point in the space occupied by its switch and side track without damage and inconvenience to itself and the public.

"5th. The defendant maintained fences and cattle-guards at the east end, and 100 feet west of the west end of its switch and side track.

"6th. The subjoined and annexed plat, marked 'E,' is a correct plat of the premises.

"Upon the foregoing facts the court concludes the law to be: 1st. That the defendant ought to have maintained a fence at the point where the plaintiff's animal entered upon the railroad.    2d.  That the defendant is liable for the value of the animal killed, to wit, one hundred and twenty-five dollars."

The question presented by the exceptions to the conclusions of law is, can a railroad company be held liable for the killing of stock that entered upon the track where one side of the road can be fenced and the other side must necessarily be left exposed, without any protection whatever, by fence or otherwise, against stock entering upon the track, for the reason that the road was not securely fenced in at that point?

This action is based upon the statute of March 4th, 1863, 1 R. S. 1876, p. 751, making railroad companies liable for the injuring or killing of stock by the running of their cars.

While the statute does not require the company to fence its road, the 7th section provides that "This act shall not apply to any railroad securely fenced in, and such fence properly maintained by such company, lessee, assignee, receiver, or other person running the same."

The statute makes no exception of places where the road can not be securely fenced in; but the courts have held that such places form proper exceptions, and the statute does not

apply to them. See the cases of *Indianapolis, etc., R. R. Co.* v. *Kinney,* 8 Ind. 402; *Lafayette, etc., R. R. Co.* v. *Shriner,* 6 Ind. 141; *Bellefontaine R. W. Co.* v. *Suman,* 29 Ind. 40; *Indianapolis, etc., R. W. Co.* v. *Caudle,* 60 Ind. 112; *Indianapolis, etc., R. R. Co.* v. *Christy,* 43 Ind. 143; *Indianapolis, etc., R. R. Co.* v. *Oestel,* 20 Ind. 231; *Indianapolis, etc., R. R. Co.* v. *Parker,* 29 Ind. 471; *Indianapolis, etc., R. R. Co.* v. *Lowe,* 29 Ind. 545.

Where one side can not be fenced in, but must necessarily be left open and free for access to the railroad track, there the railroad can not be securely fenced in by building a fence on the other side.

In this case, to place a fence on the south side of the right of way, and a cattle-guard on the west side of the street, connected with the east end of the fence, where the plaintiff insists they ought to be, would be worse than no security; they would only furnish a trap in which trains going east would catch stock when therein frightened while attempting to escape by crossing the track in front of the engine. Such a fence could afford no security. While it might prevent stock from entering upon the track from that side, it would be more dangerous for stock entering upon the track from the other side and crossing over; it would prevent their escape without recrossing the track.

We do not think the railroad, at the point where the appellee's horse entered upon the track, could, consistently with appellant's business and the interest of the public, be securely fenced in; and that appellant is not liable for killing appellee's horse, merely because it had not erected a fence on the south side of the road at the point where the horse entered upon the track.

The facts found by the court do not sustain the conclusions of law. The court erred in overruling the exceptions, for which error the judgment must be reversed.

Per Curiam.—It is therefore ordered, upon the foregoing

opinion, that the judgment of the court below be and it is in all things reversed, at appellee's costs, and that the cause be remanded, with instructions to the court below to sustain appellant's exceptions to the conclusions of law, to enter conclusions of law in accordance with this opinion, and render judgment thereon in favor of defendant.