EDWARD A. GRONDIN v. THE DULUTH, SOUTH SHORE & ATLANTIC RAILWAY COMPANY.

*Railroad companies—Killing stock—Depot grounds.*

1. A railroad company is not required to make a formal separation or dedication of its station grounds, nor to put up notices of their limits, especially in a new and unsettled country.

2. Station grounds cannot be limited to the territory within the switches, and at least as much of the main line and grounds outside of the switches as is in actual use for reaching the side tracks within the switches is a part of the station grounds, to which the statutory requirement to fence does not apply.[1]

Error to Schoolcraft. (Steere, J.) Submitted on briefs May 1, 1894. Decided June 2, 1894.

Case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the·opinion.

*J. W. McMahon,* for appellant.

---

[1] For cases bearing upon the construction of 3 How. Stat. § 3377, which requires railroad companies to fence their tracks, in so far as the question is involved of what portions of said tracks are exempt from the operation of the statute, see:

1. *Railway Co. v. Campbell,* 47 Mich. 265, where plaintiff's cow wandered upon defendant's track at a point some 160 or 200 yards east of the station house, and was there run over and killed, and it was held:

*a*—That the statute has no reference to station grounds; citing *Railway Co. v. Lull,* 28 Mich. 510.

*b*—That, strictly speaking, perhaps, the place where the cow was killed was not within the station grounds, but it constituted the approach to said grounds, and could not have been fenced without incommoding the defendant and the public in the transaction of the freight business of the road, and the case is therefore within the reason of the case above cited.

2. *McGrath v. Railroad Co.,* 57 Mich. 555, holding:

*a*—That the convenience of the public, as well as that of the railroad company, is the reason why the statute should not apply to depot and station grounds, and it would require legislative action to induce courts to hold 'otherwise.

*b*—That the existence or extent of such grounds is not to be determined by the continued actual use of any part thereof; that,

*C. W. Dunton,* for plaintiff.

GRANT, J. The plaintiff's horse was killed by a train of the defendant near a station called Seney, in the county of Schoolcraft. The point where the horse was killed was between 300 and 400 feet east of the east switch at the station. The liability is founded upon the failure to fence its road as required by the statute.

Seney is a place of about 300 inhabitants. Neither the highways, the railroad, nor any land in the vicinity is fenced, except a few gardens. One of the principal highways runs parallel with the railroad, immediately on the north of it, and occupies a part of the defendant's right of way. Plaintiff was in the habit of turning his horse loose at night, about a quarter of a mile south of the station grounds, and did so on the night before he was killed. The court submitted the question to the jury to determine whether the place was within the depot or station grounds; saying to them that no specific limits had been designated, and that no depot or station grounds had been set apart and clearly defined, by the railroad company,

---

when station grounds are laid out, their contemplated *future* use is not unfrequently of more consideration than the actual demands at the time in determining their shape and extent; that, when these grounds have been appropriated and set apart by the company, it would be neither safe nor wise to allow their limits to be curtailed or extended by a jury in a proceeding where they collaterally come in question, as in this case, upon the mere showing that any part of the same was not in actual use at any particular time.

3. *Rinear v. Railroad Co.*, 70 Mich. 620, holding:

*a*—That the criterion is not whether all of the grounds set apart by a railroad company for depot and station purposes have been actually used, but whether, in view of the present or prospective needs of such grounds for station or depot purposes, the company has used a reasonable discretion in throwing them open for that purpose.

*b*—That where the testimony shows, without dispute and beyond question, that the station grounds of a railroad company are not unreasonably extensive for the accommodation of the public, and of the patrons of the road at that place, and that the animal killed entered upon the premises of the company within their limits, the question of their extent should not be submitted to the jury, it being a question of law for the court.

except in so far as the siding, switches, sheds, and other buildings, and the use made of them, might indicate.

This case is ruled by *McGrath v. Railroad Co.*, 57 Mich. 555. That case and this differ substantially, in their facts, in only this: In the former case the animal went upon the track inside the limits of the east and west switches, while in the present case the animal entered upon the track outside of the eastern switch. There was no dispute in either case about the facts. In this case, near the eastern switch are located coal sheds, with a side track leading to them. Opposite the coal sheds is another side track. It is conclusively established by the evidence that the use of the main track, where the horse entered, and for some distance beyond, is required for switching purposes. In order to back cars upon either side track, it is necessary to run trains for that distance upon the main track. Station grounds cannot be limited to the territory within the switches. Train men, in side-tracking trains, would be obliged, oftentimes, to pass from their trains several hundred feet, to reach the switch. Cattle-guards within that space would be inconvenient, if not unsafe. It must therefore be held that at least as much of the track and grounds outside of the switches as is required and is in actual use for reaching these side tracks is a part of the station grounds, to which the statutory requirement to fence does not apply. A railroad company is not required to make a formal separation or dedication of its station grounds, nor to put up notices of their limits, especially in a new and unsettled country. Undoubtedly, if the animal had gone upon the track beyond the yard limits, and from there had entered the yard limits, where it was killed, the company would have been liable.

Judgment reversed, and no new trial ordered.

The other Justices concurred.