ROBERT SNELL v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

October 31, 1902.

Nos. 13,005—(10).

### Cattle Killed at Railway Crossing—Contributory Negligence.

The plaintiff's sixteen-year old son approached defendant's railroad crossing with a team and wagon, at the rear of which were tied two cows; and, because they did not lead well, the boy left the team to go on without a driver, and went behind the cows to drive them along. At a point about eight rods from the track, where the view of the track was obstructed by a growth of underbrush and timber, the boy stopped and listened for signals or other indications of approaching trains, and, hearing none, he went on without further investigation. While crossing

[1] Reported in 91 N. W. 1108.

the track, the cows were killed by one of defendant's trains. *Held*, the boy was guilty of contributory negligence.

### Fence—Proximate Cause.

In the village of Eden Valley defendant maintained a depot and side track for the accommodation of warehouses, lumber yard, coal shed, etc. The distance from the east to the west switch was eighteen hundred feet, and the space, to the extent of two hundred feet west of the west switch and three hundred fifty feet east of the east switch, was left unfenced by defendant, and treated as a part of its depot grounds or switching yard. Certain stock belonging to plaintiff was killed at a point about one hundred fifty feet west of the west switch. *Held*, it was a question of fact for the jury to determine whether the proximate cause of the killing of the cattle was the absence of the fence, and whether the point where they were killed was reasonably required by the railway company as a part of its depot grounds or switching yard.

Action in the district court for Meeker county to recover $150 for the negligent killing by defendant of plaintiff's cattle. The case was tried before Powers, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and a new trial granted.

*Alfred H. Bright*, for appellant.

*N. D. & C. H. March*, for respondent.

LEWIS, J.

First cause of action: At a point one mile from the village of Eden Valley a highway crosses defendant's railroad at an angle of about 45°. The right of way was fenced at this point, and the distance from the fence to the center of the track was fifty feet, and from the fence, running parallel to the highway, to the center of the wagon road, seventy-five feet. The space on both sides of the right of way was, for a considerable distance, covered with brush and timber, which obstructed a view of the track by a traveler on the highway until reaching the right of way fence. From the portion of the highway which crossed the right of way the view was unobstructed for a long distance, both east and west. Plaintiff's son, a lad sixteen years of age, approached this

crossing with a team and wagon, at the rear of which were tied two cows. For some time before arriving at the crossing the boy had left the team to travel without a driver while he had gone back to drive the cows, which were not leading well. According to his testimony, when he arrived within about eight rods of the railroad track he stopped the team and looked and listened for trains. At that point his view was cut off by the brush, and, not being able to hear any signals or trains, he started on again, still walking along behind the cows. When the horses were about to step upon the track, the boy noticed a gravel train close upon them, rapidly backing down from the east. The horses succeeded in getting across with the wagon, but the cows were struck and killed by the train.

It is admitted that defendant was guilty of negligence in rapidly backing its train over the crossing without giving the ordinary signals. The only question is, was the boy guilty of contributory negligence? We must answer the question in the affirmative.

No exception can be made on account of his age, and the evidence discloses the fact that he was a boy of average intelligence and experience. While the team was gentle, and it was not in itself an act of negligence to leave them to travel without a driver, yet it is clear that had the boy remained in the wagon, in direct control of the horses, he would have been in a position to discover the approaching train and control the team; and if he left such point of advantage, and for his own convenience walked behind the cows, he thereby placed himself and the property in a more hazardous position, because by so doing he reduced his chances of discovering approaching danger. Therefore, if his view was obstructed before reaching the right of way by reason of the disadvantage of his position at the rear, it was his duty to go forward and look for approaching trains before starting across the track; and, having failed so to do, he must be held to have contributed to the injury which followed.

2. Second cause of action: Eden Valley was an incorporated village, wherein were established defendant's depot, water tank, and coal sheds upon the main track, two elevators and a lumber yard upon the north siding track, and in addition there was a

siding track running along the south side of the coal shed, and a stub track running off to the northeast. According to the record, the west switch was located at a point ten hundred fifty feet from the depot, and seven hundred fifty feet from the coal shed. The west switch was the point where the elevator and lumber-yard siding track connected with the main track, and at a point on this siding track about one hundred fifty feet east of the main west switch the stub track above mentioned branched off. The switch to the east, where the elevator and lumber siding track connected with the main track, was at a point seven hundred feet east of the depot and eight hundred twenty-five feet east of the coal shed. To the east of the village the defendant had fenced its right of way to a point three hundred fifty feet east of the east switch, and to the west the fence across the right of way was located two hundred feet west of the west switch, at the end of a pile bridge which acted as a cattle guard, so that the space remaining unfenced was twenty-three hundred fifty feet, and the total distance between the two extreme switches was eighteen hundred feet. During the night some of plaintiff's cattle had broken out of the pasture, located some distance east of the village, and were huddled together upon the track at a point about one hundred fifty feet west of the west switch, and two of them were killed by defendant's train.

The court instructed the jury to return a verdict for plaintiff for the value of the stock killed, upon the ground that it appeared, as a matter of law, that the cattle entered upon the railroad track by reason of the absence of a fence, and that it was the duty of the company to maintain fences at the point where the cows were killed. We are unable to agree with the court on either proposition. It was clearly for the jury to determine from the evidence, under proper instructions, whether or not the cattle entered upon the right of way at a point where the company was or was not required to fence.

The other question may be stated as follows: Was that portion of the track between the bridge and the west switch, a distance of one hundred fifty feet, reasonably necessary for the accommodation of defendant's employees in cutting off cars and in making

up trains? Or does it appear, as a matter of law, that defendant should be required to maintain a fence and cattle guard at a point contiguous to the west switch, and that therefore the space between the west switch and the bridge should have been fenced?

The question turns upon the effect the cattle guard would have in the vicinity. From the evidence on behalf of respondent, it appears that for the purpose of working a switch only six or eight feet of ground are necessary, and it is urged that defendant should be required to construct its cross-fence within eight or ten feet of the switch. On the other hand, the testimony on behalf of defendant tended to show that this switch was within what may be termed the depot grounds or switching yard of the village; that it was frequently used in switching cars upon the several side tracks mentioned, and, if a cross-fence was required to be maintained in that vicinity within a few feet of the switch, it would necessitate putting in a cattle guard; and that a cattle guard is a dangerous thing, increasing liability of employees to accident in charge of defendant's trains. The evidence tends to show that brakemen, in handling the switch and in cutting off cars, were required to pass back and forth over the track for the entire distance between the switch and the bridge, and that the presence of the cattle guard would unreasonably increase their liability to accident. We are of the opinion that it was a question of fact to be determined by the jury whether or not the space mentioned was reasonably required by defendant as a part of its depot grounds or yard system. It certainly does not appear, as a matter of law, from the evidence, that the defendant was required to maintain fences and a cattle guard at that point.

In the case of Greeley v. St. Paul, M. & M. Ry. Co., 33 Minn. 136, 22 N. W. 179, it was held that the facts in that case did not tend to bring the case within either of the implied exceptions to the statute; and those exceptions are declared in that case to exist when there is a legal duty imposed upon the company to the contrary, or when the public convenience is conserved, and a "public place" is defined as a place put into practical use by the public.

We are not disposed to insist upon the term "depot grounds" as

87 M.—17

descriptive of the limitation to the implied exception to the statutory requirements. We can see no distinction in principle between the necessities of a fence at a point strictly within the so-called depot grounds, and a point where, by the use of switches and side tracks, the presence of cattle guards would tend to increase the hazard to employees of the railway company, although such point might be beyond the ordinary limits of the depot grounds. In other words, the implied exceptions to the terms of the statute should not be held strictly to apply to the convenience or safety of the public having business relations other than as employees. In a certain sense, the employees of a railroad company are the public, and their interests and convenience are to be considered in the application of the statute, as well as those who do not bear that relation to the company. Of course, the mere inconvenience or the mere matter of expense on the part of the railway company would not bring the case within the implied exceptions; but there may be such a condition that it is impracticable to put a fence along the yard system of a railroad, when it would materially affect the safety of those in the discharge of their duties. Although in one sense the public would not, in a direct way, be affected by such condition, yet, in another and broader sense, the public is interested in having such a condition maintained that employees may work with reasonable safety. It is better that the public dispense with the presence of the fence for the protection of persons and stock, than that a condition be maintained which would unreasonably increase the hazard of railroad employment. In Greeley v. St. Paul M. & M. Ry. Co., supra, it does not appear from the record to what extent the yard was used for switching, and to what extent the railroad employees would be affected by the presence of the cattle guard; hence the court's attention was not called directly to the point now before us.

In some of the states the legislatures have taken note of the necessity of making the exceptions applicable to such places as switching yards, and have so enacted. In our own state, in the more recent decisions, this court has recognized the necessity of extending the exceptions beyond the narrow limits understood by the term "depot grounds."

In the case of Nickolson v. Northern Pac. Ry. Co., 80 Minn. 508, 83 N. W. 454, the court uses this language:

"This implied exception has been held as to such places as depot and station grounds used for the convenience of passengers and the necessary handling of freight. This is as far as this court has gone, although there may be other and further exceptions,—such, for instance, as a yard used for switching purposes, crossed at surface by streets. Fencing without cattle guards on either side of the street crossings would be of no value, and at such places guards would prove death traps to switchmen, who in such yards have to do a large part of their work on the ground."

In the case of Marengo v. Great Northern Ry. Co., 84 Minn. 397, 400, 87 N. W. 1117, this language is used:

"An exception would probably also apply to yards devoted distinctively to switching, and the work of receiving, distributing, or making up and sending out trains, whenever the legal duty of maintaining cattle guards at highway crossings might seriously endanger the lives of switchmen in the use of the tracks."

In both those cases, however, the facts were not sufficient to bring them within the exception.

Order reversed, and a new trial granted.

BROWN, J. (dissenting).

I dissent. The evidence made the question of contributory negligence one for the jury. The boy did not, as said in the majority opinion, walk behind the cows "for his own convenience," but, on the contrary, for the reason that he deemed it necessary to do so. He testified—and there is nothing in the record to contradict him —that one of the cows would not lead, and because of this fact, his team being gentle and easily guided by the voice, he walked behind to drive her. If the cow would not lead, tied behind the wagon, it was clearly not necessary that the boy remain upon the seat of his wagon, and drag the animal across the track by the horns. It was for the jury to say whether he acted prudently or not. Indeed, if the evidence is conclusive either way upon this

question, it is in favor of the proposition that he was not negligent. I concur in the result in other respects.

START, C. J. (dissenting).

I concur in the dissenting opinion of Justice BROWN.