STEPHAN MATTES v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 7, 1905.

Nos. 14,383—(122).

**Railroad—Fence.**

> G. S. 1894, § 2692, requiring every railway company in this state to fence its road, and imposing a liability for all damages resulting from a failure of compliance therewith, *held* to apply to the repair shops and side tracks of defendant referred to in the opinion, if practicable to be fenced; that question being, on the evidence in this case, one for the jury.

[1] Reported in 104 N. W. 234.

**Contributory Negligence.**

> On the evidence presented in the record, the questions of contributory and imputable negligence were for the jury.

Action in the district court for Stearns county by plaintiff as administrator of the estate of Alois Mattes, deceased, to recover $5,000 for the death of intestate. The case was tried before Searle, J., who directed a verdict in favor of defendant upon the close of plaintiff's testimony. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Bruener & Klasen* and *J. D. Sullivan,* for appellant.

*M. L. Countryman* and *Geo. H. Reynolds,* for respondent.

BROWN, J.

The facts in this case are as follows: Defendant owns and operates certain repair shops, consisting of various buildings and numerous side tracks, located upon an eighty-five acre tract of land owned by it two miles west of St. Cloud. The shops are used for the purpose of repairing, remodeling, and rebuilding cars used by defendant in the conduct of its business, and are reached by a single or spur track from the main line of its road. That track is designated in the record as "Track No. 11," and all other tracks in the yards are connected with it by switches. It extends from the main line, running between St. Cloud and Willmar, through the yards, and several hundred feet beyond, where it ends on the open prairie. A public highway connecting two other highways, one running north and the other south of the land on which the shops are located, extends across this lead track north and south between the switch connecting the side tracks and its terminus. There are no switches upon or beyond the highway. At the time complained of, plaintiff's intestate, a boy six and a half years of age, with his older brother eleven years and eight months of age, were herding cattle upon this land, and in the vicinity of the side tracks and repair shops. They entered upon the yards—whether for the purpose of sheltering themselves from a rainstorm or some other purpose is not clear—and were run into by cars being moved by defendant's servants, and killed. Plaintiff brought this action, as the administrator of the younger boy, to recover damages for his death. The action is founded upon two alleged acts of negligence on the part of defendant:

(1) In failing and neglecting to fence the shop yards and tracks as required by G. S. 1894, § 2692; and (2) in moving the cars in the yards on the occasion in question without proper signals or warning to persons likely to be upon or about the yards. At the close of the trial the court below directed a verdict for defendant, and plaintiff appealed from an order denying his motion for a new trial.

1. The principal question presented on this appeal, from plaintiff's standpoint, is whether the evidence adduced on the trial is sufficient to justify recovery upon either ground of negligence charged in the complaint. The second claim of negligence, viz., that defendant was in fault in not giving, before moving the cars causing the death of plaintiff's intestate, proper signals for the purpose of warning persons likely to be within or about the yards, need not, in view of the conclusion we have reached on the other branch of the case, be considered. The claim is of doubtful force. We therefore pass at once to the consideration of the question whether defendant was required by the statute to fence these yards. The statute provides that

> All railroad companies in this state shall  *  *  *  build or cause to be built good and sufficient cattle guards at all wagon crossings, and good and substantial fences on each side of such road  (G. S. 1894, § 2692.)

and that any company failing and neglecting to fence its road and maintain the same in good condition

> Shall be liable for all damages sustained by any person in consequence of such failure or neglect.  (G. S. 1894, § 2695).

This statute has been very strictly enforced in this state. It has been held to impose upon a railway company the duty of fencing every part of its road, and rightly so, for the statute itself contains nothing to indicate that the legislature intended to except any part or portion of the road from its operation. Certain exceptions implied by the court have been read into the statute, by which companies are relieved from the duty of fencing their switchyards or station grounds. But in the case of station grounds the exception is founded upon grounds of public convenience; and in the other, the increased dangers to railroad employees that would necessarily follow from the construction of cattle

guards in yards where switching cars is the principal business of the company. No other exceptions have been implied to relieve from the obligation to fence. Nickolson v. Northern Pac. Ry. Co., 80 Minn. 508, 83 N. W. 454; Marengo v. Great Northern Ry. Co., 84 Minn. 397, 87 N. W. 1117; Snell v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 87 Minn. 253, 91 N. W. 1108.

The yards here in question do not come within any of the exceptions heretofore laid down, and the real question presented is whether another exception should be added to the list. It is the contention of defendant that these yards are in no proper sense a part of the company's "road," within the meaning of the statute; that by the use of the word "road" the legislature plainly had in mind the right of way and tracks over which a railway company, in carrying on its business as a carrier of freight and passengers, runs and operates its trains, and that there was no intention to require any part or portion of the road over which trains were not operated to be fenced. There is force in this argument, but it cannot well be harmonized with our decisions. The yards in question were not, it is true, designed for the purpose of operating a railroad, nor for running trains, but solely as a convenient instrumentality in the general conduct of defendant's business, as a place where disabled cars might be repaired or stored. No trains were run upon the tracks of the yards. Cars were there switched and moved about by hand and horse power, and at times by a switch engine when cars were brought in for repairs, or taken away after being repaired. The yards were isolated from the main line of the railroad —one branch of which extends from St. Cloud to Fergus Falls, and the other from St. Cloud to Willmar—which was properly fenced, and all the dangers incident to the operation of trains upon unfenced roads are not present.

But the majority of the court are of opinion that the yards come within the scope and purpose of the statute—constitute a part of the road, within its meaning—and that the obligation to fence exists. They are situated upon an eighty-five acre tract of land owned by defendant, which has been much frequented by the public, young and old, if not with defendant's express permission, without objection on its part. It has been used for various public purposes—picnics, baseball, and other amusements—and cattle were herded thereon by the

people living in the vicinity. Defendant kept a large force of men at work at the shops, and cars were frequently moved about the various tracks by hand and horse power, and at times by a switch engine. The unfenced condition of the yards permitted children and others to go upon the tracks at will, and thus incur the danger of injury from the movement of cars and in other ways. The reason for excluding depot grounds from the operation of the statute (public convenience) does not apply, and an exception cannot be founded upon that ground; and the question of practicability (the ground upon which switchyards are removed) is, as we shall presently see, one of fact for the jury. So that the grounds upon which the exceptions heretofore applied have been founded do not exist as respects these yards. And although all the dangers incident to the operation of the main line are not present, enough appear to justify the conclusion that the yards come within the purpose of the statute, constitute a part of the road, and should be fenced. The failure of defendant to fence must therefore be held prima facie evidence of negligence, and sufficient to justify a recovery, if the unfenced condition of the yards was the proximate cause of the injury complained of.

· 2. It is further contended that the fact that the lead track extended over the highway necessitated the construction of cattle guards, and rendered the fencing of the yards impracticable; that, if cattle guards were placed at the intersection of the highway with the lead track, it would result in hampering and embarrassing the work of defendant's employees in switching cars from track to track, and render their work more dangerous and hazardous. We are of opinion, as held by the trial court, that this was a question of fact for the jury to determine. The nature of the yards, the tracks therein, and their uses, together with the amount of switching and the manner of doing it, are not such as to justify the court in declaring, as a matter of law, that it was impracticable to fence them.

The point made that the complaint does not charge defendant with a failure to construct and maintain cattle guards is not well taken. The complaint alleges that defendant wholly failed and neglected to fence its yards, and carelessly and negligently left the tracks therein open and uninclosed. These allegations are sufficient to admit proof of the failure of defendant to construct cattle guards, for cattle guards

are but a part of the fence, and are constructed in connection therewith, so that the allegation that defendant wholly failed and neglected to fence the yards includes by implication an allegation that it also failed to construct cattle guards at the highway crossing.

3. Defendant further contends that the parents of the deceased were guilty of contributory negligence in permitting him to go with his older brother upon the premises of defendant, in the vicinity of the yards and tracks, for the purpose of herding cattle; that their negligence in this respect should, as a matter of law, be imputed to deceased; and, if that view be not sustained by the court, that the older brother, whom deceased accompanied on the fatal day, was guilty of negligence in going upon the railroad tracks, and that his negligence should be imputed to the deceased; and, lastly, that the deceased was himself of sufficient age and intelligence to be chargeable with notice of the dangers incident to the operation of railroads or in connection with these yards, and was guilty of contributory negligence. We are not required to enter into a discussion of the law of imputable negligence, for it is clear that, on the facts disclosed in the record, these several contentions presented questions of fact for the jury to determine. Gunderson v. N. W. Ele. Co., 47 Minn. 161, 49 N. W. 694; Hepfel v. St. Paul, M. & M. Ry. Co., 49 Minn. 263, 51 N. W. 1049. Neither the Fitzgerald case, 29 Minn. 336, 13 N. W. 168, nor the Fezler case, 85 Minn. 252, 88 N. W. 746, is in point to the contrary. See also Hoppe v. Chicago, 61 Wis. 357, 21 N. W. 227, and Dahl v. Milwaukee, 62 Wis. 652, 22 N. W. 755.

This disposes of all the questions necessary to be considered. The result is the conclusion that the trial court should have submitted the case to the jury under proper instructions.

The order appealed from is therefore reversed, and a new trial granted.