### SIROVY v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Eighth Circuit. May 28, 1923.)

No. 6117.

1. Railroads ⬅361—Station grounds held exempt from statutory requirement of fencing.

A strip of land owned by a railroad company at a division station, extending 2,500 feet from its main line, having thereon switch tracks, roundhouse, coal sheds, etc., and also elevators, warehouses, stockyards, and other industrial structures to which the public required access, *held* exempt from the requirement of fencing under a state statute requiring every railroad company to maintain fences on each side of its lines with cattle guards at crossings, "except at station and depot grounds and other places which the necessary business of the road or public convenience requires to be open."

2. Railroads ⬅400(4)—Whether statute required fencing of grounds at station held for court.

Whether a railroad company was required by a state statute to fence certain grounds in use at a station *held*, under the evidence, properly determined by the court.

3. Railroads ⬅361—Statutory requirement to fence tracks.

Under a state statute requiring railroad companies to maintain a fence on each side of its lines, except at certain places, no duty is imposed to fence at any place on one side only.

4. Railroads ⬅361—Company held not liable for injury to boy in station yards.

Where two small boys entered yards of a railroad company at a station where one of them was injured without fault of the company, the fact that they entered through a hole in a snow fence on one side of the yards, which the company was under no duty to maintain, *held* not to establish negligence which rendered it liable for the injury, especially where there was a gate constructed and used by their father through which they could have entered.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action at law by Joseph R. Sirovy, as father of Robert Sirovy, a minor, against James C. Davis, Director General of Railroads, etc. Judgment for defendant, and plaintiff brings error. Affirmed.

Leo J. Seifert, of Fairmont, Minn. (Albert R. Allen, of Fairmont, Minn., on the brief), for plaintiff in error.

F. W. Root, of Minneapolis, Minn. (C. O. Newcomb and A. C. Erdall, both of Minneapolis, Minn., on the brief), for defendant in error.

Before SANBORN, LEWIS, and KENYON, Circuit Judges.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEWIS, Circuit Judge. Jackson, Minnesota, is a division station on the Chicago, Milwaukee & St. Paul Railway. The main line runs through northwesterly and southeasterly, on which there is a passenger depot; on side tracks paralleling it are the freight depot, ice-house, car repair house, and Standard Oil Company building. Extending from the main line to the southwest the railway company owns a strip of land about 2,500 feet long of irregular width, used for terminal and freight purposes. There are a number of switch tracks on it connecting with the main track a short distance east of the passenger depot, also a "Y" track connecting these switches with the main line to the northwest. On this strip the railway company has a round-house of 13 stalls for its locomotives, the necessary turn-table used in connection, coal sheds, sand house, oil house and coal hoists. Just beyond the round-house are elevators, warehouses, coal sheds and other industrial structures, also stockyards. These facilities for receiving and delivering freight are reached by the public over a road which enters the strip from the south. From the main line to the round-house the strip contains five or six tracks, including the "Y" and some of them cross over the others. Beyond the round-house the strip narrows in width to 200 feet, and two tracks are continued to the stockyards, elevators, warehouses, coal sheds and other structures. They are built along these two tracks on either side for a distance of several hundred feet. The greater part of the town lies south of both main line and the switches and yard tracks on the strip.

Joseph R. Sirovy lives north of and adjoining this strip of land, about opposite the round-house. He had been in the employ of the railway company for several years, first in the yards in handling coal and later as a section man doing track work. He had two boys, Edward, 7, and Robert, 5 years old, on August 15, 1919. On that day their mother sent the older boy to a store south of these switches and yard tracks for groceries. He took his younger brother with him. They could have followed a street or road to the west from their home and then have turned south over a crossing and in this way they would have avoided going across the yards. They had been warned by their mother and father not to go through the yards. But those living on the north side frequently went across the tracks, and in doing so had made a path toward the round-house. The two boys went that way. It was the shortest route. They stopped in front of the round-house and watched an engine there for a short while. The older boy started on, the younger ran to overtake him, and as he was passing near the turn-table he stubbed his toe and fell into the pit of the turn-table, breaking his leg. Thereupon his father brought this action in his son's behalf against the Director General to recover damages for the injury. On the case thus made by the plaintiff the court instructed a verdict against him.

The grounds of recovery set up were these:

(1) "The defendant negligently left said turn-table unfastened, unguarded and in such condition that it was and could be easily turned and moved by children; that the same was dangerous and very attractive to young children;" and (2) that "defendant failed to construct and maintain a sufficient fence along and about its premises, and negligently failed to maintain and

keep in repair the board fence in and about the right-of-way of defendant railroad company, immediately to the north of said turn-table and to the south of plaintiff's property."

There was no evidence that the turn-table was unfastened or that it could be easily turned and moved by children, or that these boys got upon it, or moved it or played upon it, or that it in any respect was the cause or instrumentality of the injury; besides, that alleged ground has been abandoned here, and we put it aside.

[1] To support the other ground the plaintiff relies on the Minnesota statute (Gen. St. 1913, § 4263), which reads:

"Every such [railroad] company shall build and maintain on each side of all lines of road owned and operated by it, good and substantial fences, and shall build and maintain good and sufficient cattle guards at all road and street crossings and other openings, except at station and depot grounds, and other places which the necessary business of the road or public convenience requires to be open."

The following section of the statute makes any company failing to comply with those requirements liable for all damages resulting therefrom. The Minnesota Supreme Court construed a prior statute of like character as an intended protection to children as well as to cattle, Rosse v. Railway Co., 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591, 64 Am. St. Rep. 472, which we accept.

In ruling on the defendant's motion for a directed verdict the District Judge assigned two reasons for his action: (a) The statute did not impose on the railway company the duty of fencing its yards; and (b) the failure to fence was not the proximate cause of the injury to the child. As to the first reason assigned, the very language of the statute was relied on. It exempts from its requirements "station and depot grounds, and other places which the necessary business of the road or public convenience requires to be open." The situation seemed to bring the yards within the exemption. Public convenience required free and ready ingress and egress to and from the industrial shipping and receiving plants along the two tracks extended beyond the round-house. Much switching was required on these tracks, and also on the several tracks just east leading to the round-house, coal sheds and other railway necessities. The strip could not be fenced within the requirements of the statute without cattle guards and wing fences to them from the fences upon either side. The Supreme Court of Michigan, in Rabidon v. Railway Co., 115 Mich. 390, 73 N. W. 386, 39 L. R. A. 405, had under consideration an action brought to recover for injuries to a minor child received within railway yard limits. It was there pointed out that the exemption from fencing at such places is founded on the danger to railway employés in handling trains if the yards should be enclosed with fences and the necessary cattle guards. The same reason for the exemption is recognized in Nickolson v. Railway Co., 80 Minn. 508, 83 N. W. 454. See also McGrath v. Railroad Co., 57 Mich. 555, 24 N. W. 854; Grondin v. Railway Co., 100 Mich. 598, 59 N. W. 229.

[2] But plaintiff insists that the trial court should have submitted to the jury the question whether the necessary business of the road or

public convenience required that the yards be left unfenced, and in support of that contention refers to Mattes v. Railway Co., 100 Minn. 34, 110 N. W. 98, which sustained the action of the trial court in submitting to the jury whether it was practicable to fence railway repair shops and yards without materially impairing their usefulness as such. The facts in that case are fully set out in 95 Minn. 386, 104 N. W. 234. There the railway had its repair shops on an 85-acre tract between stations. The yards were isolated from the main line. It is said that they were not designed for the purpose of operating a railroad nor for running trains, but solely as a convenient instrumentality in the general conduct of defendant's business as a place where disabled cars might be repaired or stored. A large force of men worked at these shops, but it does not appear and it is not probable that the public had any occasion to go there. One track led to them from the main line, and the cars having been taken into the yards for repair were then switched and moved about by hand and horse power. The state statute in force at the time the injury under consideration was inflicted did not contain the exemption clause, though it was recognized as a general rule that exemptions would be read into it "by which companies are relieved from the duty of fencing their switch yards or station grounds"; that this was necessary to public convenience and from "the increased dangers to railroad employés that would necessarily follow from the construction of cattle guards in yards where switching cars is the principal business of the company." The court concluded that the statute was broad enough to require the repair shops to be fenced and announced its unwillingness to read into the statute what it considered would be another exemption. A plat covering the main line, station grounds and adjoining and connecting strip with the tracks, switches, round-house, elevators, warehouses, coal sheds, stockyards and other structures delineated thereon was introduced in evidence; and from an examination of it, considered in connection with the testimony in the case, we are convinced, as the trial court was, that the exemptions given by the statute should be applied here, and that there is no proof in the record which would sustain a contrary view. No more ground appears to be included in the yard limits, either in length or width, than needed for the public purposes to which it is devoted. Furthermore, we think the principle announced in Rabidon v. Railway Co., supra, is sound:

"When these grounds are appropriated and set apart by the company, it would be neither safe nor wise to allow their limits to be curtailed or extended by a jury in a proceeding where they collaterally come in question."

[3] It is also argued that the railway company should have constructed a fence along the north side of the yards, and that that would have been a sufficient compliance with the statute to prevent children on that side from going upon the tracks. But under the statute liability is imposed without negligence on the part of the railroad company. Its purpose is to afford protection as a preventative against going upon the tracks, and compliance with it exacts that the road be fenced, except at places where the exemption applies on both sides with connecting cattle guards. Fencing upon one side would be in contravention of

its purpose. As said in Railway Co. v. Leak, 89 Ind. 596, to fence only upon one side would be worse than no security; it would only furnish a trap in which stock might be caught. See Railway Co. v. Nice, 99 Ind. 152. The legislature adopted the statute as a police regulation. It determined what the railway company should do as a compliance with it, and it imposed liability for failure to meet its requirements. A plaintiff seeking relief for failure of the company to meet those re-quirements cannot at the same time set up in its stead some other meas-ure of duty, though supposedly equal in effectiveness, as a police regu-lation.

[4] The complaint alleged that defendant negligently failed to main-tain and keep in repair the board fence in and about the right of way of defendant railroad company immediately to the north of said turn-table and to the south of plaintiff's property. The facts are, the rail-way company had a fence made of boards set upright part way along the north side of the strip of land between that strip and the tract on which the father resided. It was built to hold the drifting snows. The father made a gateway through it and placed in it a gate which could be opened and shut and fastened. The older boy could open the gate, but on this occasion he did not take the trouble to do so, but he and his younger brother went through an opening in the fence to one side of the gate. It is argued that if this opening had not been there the boys would not have gone through it and gone on to the tracks. It does not follow that they would not have gone through the gate but for the hole. The testimony does not disclose just what caused the hole in the fence nor how long it had been there. The father and others in that neighborhood used the gate in going to the yards and across the tracks when they had occasion to do so. The contention that the railway company was guilty of actionable negligence in that respect seems to us to be based on a claim too unsubstantial and uncertain to sustain liability for the injuries complained of. The railway company was under no obligation to fence its switch yards unless that duty was imposed by statute. We are of opinion that the statute expressly ex-empted it from doing so. The boys came into the yards without fault or neglect of duty on the part of the Director General, and while there no negligence or lack of care toward them is shown or claimed; from which it must follow there is no liability for the injuries received by Robert. In view of what we have said, the subject of proximate cause is hardly an issue in the case.

Affirmed.