OLE NICKOLSON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

July 19, 1900.

Nos. 12,195—(202).

**Railway—Duty to Fence—Charge to Jury.**

In a personal injury case brought by plaintiff to recover for damages received by his son, aged five years, while upon defendant's tracks, it is held that the trial court erred when refusing to charge the jury, as requested by plaintiff's counsel, that it was the legal and absolute duty of defendant railway company to fence its tracks at the point where the boy first walked upon the tracks and at the point—a short distance away —where he was injured, and also when it refused to charge that the failure to fence at these points was, in law, evidence of negligence.

**Same—Yard Limits.**

The mere fact that these points were within the yard limits of defendant company did not relieve it of the statutory duty to fence its tracks.

[1] Reported in 83 N. W. 454.

Laws 1897, c. 346—G. S. 1894, § 2695.

Laws 1897, c. 346, has not affected that part of G. S. 1894, § 2695, construed in Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, whereby Fitzgerald v. St. Paul, M. & M. Ry. Co., 29 Minn. 336, was overruled on one point.

Action in the district court for St. Louis county to recover $1,999 for personal injuries sustained by plaintiff's minor child. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*John Jenswold, Jr.,* for appellant.

*C. W. Bunn, L. T. Chamberlain, J. L. Washburn* and *W. D. Bailey,* for respondent.

COLLINS, J.[2]

This is a personal injury case brought by the plaintiff to recover for damages received by his minor son, aged five years, while upon the defendant's tracks, to which he had gone shortly after leaving the plaintiff's residence, about two or three blocks away.

The place of the accident was within the city limits of Duluth, and some two or three hundred feet north of the north end of the Interstate bridge between West Superior, Wisconsin, and Duluth, Minnesota, across the Bay St. Louis. Commencing near the bridge, and running northerly, are defendant's double tracks; one being used for outgoing trains, and one for incoming. South of the point of the accident several roads unite, using the same bridge across the bay. The double tracks extend northerly some fifteen hundred feet to the switching or freight yards of the defendant company. It is about two miles from the scene of the accident to the Duluth Union depot. In the vicinity of the bridge and northerly there are many houses, evidently of a very poor character, occupied largely by laboring people. For some distance north of the bridge, and at the point of the accident, the tracks are on an embankment fifteen feet high at the highest point. The tracks reach the surface before coming to the switch or freight yard. The defendant's yard ex-

[2] LEWIS, J., having been of counsel, did not sit.

tends, in name, to the bridge; but it is quite evident that the handling of freight cars for switching purposes is all done several hundred feet away, in and near to the freight yard, and that if any switching is done south thereof, or within several hundred feet of the place of the accident, it is merely incidental.

There are a large number of assignments of error, but, as we look at the case, we are required to consider but two. The defendant's tracks are not fenced north of the bridge. The court was requested by the plaintiff's counsel to charge the jury that it was the legal and absolute duty of the defendant to fence its tracks at the point where the boy first walked upon the tracks, and at the point, a short distance away, where he was injured; and the court was also requested to charge that the defendant's failure to fence the tracks at these points was, in law, evidence of negligence. The court refused to give either of these requests, but left the question of negligence for the determination of the jury upon all of the facts. We think this was error.

The evidence in respect to the necessity and practicability of fencing was that given by the defendant's superintendent, who said that the only reason why the defendant did not fence at this particular place was that the track crossed a good many streets, which would have to be left open, so that the fence could only be between them, and therefore that a great number of cattle guards would be required, which would be dangerous for employees while engaged in switching. The statutory duty of the defendant company to fence its tracks is imperative, and no part thereof is excluded in terms. G. S. 1894, §§ 2692–2695; Hurt v. St. Paul, M. & M. Ry. Co., 39 Minn. 485, 40 N. W. 613. This duty applies as well within the limits of an incorporated city as without. Greeley v. St. Paul, M. & M. Ry. Co., 33 Minn. 136, 22 N. W. 179. There is an exception, by implication, to this statutory rule, where public necessity or convenience requires it, such as station grounds; but the burden of showing that it is not bound to fence its tracks, where unfenced, rested upon the company. Cox v. Minneapolis, S. Ste. M. & A. Ry. Co., 41 Minn. 101, 42 N. W. 924.

This implied exception has been held as to such places as depot

and station grounds used for the convenience of passengers and the necessary handling of freight. This is as far as this court has gone, although there may be other and further exceptions,—such, for instance, as a yard used for switching purposes, crossed at surface by streets. Fencing without cattle guards on either side of the street crossings would be of no value and at such places guards would prove death traps to switchmen, who, in such yards, have to do a large part of their work on the ground. But on this record we are not required to consider or decide what the statutory duty of defendant company may be in respect to fencing its switch or freight yard some fifteen hundred feet away from the scene of the accident, in which yard it has a large number of tracks actually and constantly used for switching or transfer purposes. We are now considering its duty at the point where the boy went upon the tracks and where he was injured,—places where for at least three or four hundred feet there were no surface crossings of streets, the tracks being on an embankment, which rendered such crossings impracticable. In fact the crossing at Oak street, the place where the boy went upon the tracks, was under the latter. No reason whatever existed for omitting to fence at this place, and, so far as we can discover, for several hundred feet northerly. The place was not within any exception which can be read into the statute, and it was error to refuse the requests to charge we have referred to.

Sections 2692–2694 were originally sections 1–3, Laws 1876, c. 24. Another section of the chapter just mentioned (section 4) was amended (Laws 1877, c. 73) so that all companies failing or neglecting to fence were made liable for all damages sustained by any person in consequence of such failure or neglect. By another act (Laws 1877, c. 107—G. S. 1894, § 2055) it was provided that a legal fence could be made of four smooth wires, the lower one to be not less than sixteen nor more than twenty inches from the ground. It was then held (Fitzgerald v. St. Paul, M. & M. Ry. Co., 29 Minn. 336, 13 N. W. 168) that the statute imposed no liability in case children were injured because of failure or neglect to fence. But later, in Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, 71 N. W. 20, the Fitzgerald case was overruled, and it was held that the broad language

of the amendment of 1877 to the statute imposing liability in all cases was sufficient to render a company liable for all damages in case of a failure or neglect to fence.   Pending that case, and shortly before its decision, there was passed by the legislature Laws 1897, c. 346; and it is contended that by reason of this amendment the law should now be construed precisely as if the amendment of 1877 had not been made, that the only object and effect of the statute is to provide damages in case of injury to domestic animals, and that since the 1897 amendment no recovery can be had for injuries to children in cases based upon failure or neglect to fence.   We cannot so construe the law.   It was never intended by the legislature to wipe out the amendment of 1877.   Had such been the object of the amendatory statute, which is very much involved, at best, the purpose would have been clearly indicated, not left in doubt.   As before stated, it was the duty of the company to fence its tracks at this particular point.   The court should have charged the jury that this absolute legal duty was upon the defendant, and that its failure to fence was evidence of negligence.

Order reversed, and a new trial granted.