PHILIP W. FEZLER v. WILLMAR & SIOUX FALLS RAILWAY COMPANY.[1]

January 17, 1902.

Nos. 12,811—(174).

**Railway—Failure to Fence—Contributory Negligence.**

A boy ten years and four months old entered upon appellant's right of way, which was not fenced, and walked on the railroad track. Seeing a freight train approach, he stepped aside, and when about half of it had passed ran along beside it, in a path at the ends of the ties, trying to keep up with the train. He stubbed his foot against one of

[1] Reported in 88 N. W. 746.

the ties and fell, one foot being caught under the car wheel, causing the injury sued for.  *Held*:

1. That the absence of the fence was not the proximate cause of the injury.

2. That the boy was guilty of contributory negligence.

Separate actions in the district court for Lyon county, by plaintiff, as father of Leo Fezler, a minor, to recover $35,000 for personal injuries; and by plaintiff, in his own behalf, to recover $3,500 for the loss of services of his minor son by reason of such injuries. By consent the cases were tried together before Webber, J., and a jury, which rendered separate verdicts in favor of plaintiff, in the first case for $3,000 and in the second case for $500. From an order denying a motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and judgment ordered for defendant.

*C. Wellington*, for appellant.

*F. D. Larrabee*, for respondent.

LEWIS, J.

These actions were brought by the father of Leo Fezler; one for the purpose of recovering damages on account of the loss of the boy's services, and the other for the son's injuries sustained by the alleged negligence of defendant in failing to fence its right of way. The cases come to this court upon appeal from an order denying defendant's motion for judgment in its favor notwithstanding the verdicts.

There is no dispute about the facts. The boy was about ten years and four months of age, residing with his parents at the village of Russell on defendant's railroad line. In the afternoon of December 16, 1900, with the consent of his mother, his father being absent from home, Leo, in company with his younger brother, seven years of age, went rabbit hunting in the country immediately surrounding the village, for which purpose he took with him three greyhounds. A river runs in the rear of plaintiff's home, which, at some short distance from the village, passes under the railroad bridge, and the boy started down this river on the ice, leading the dogs with strings. After passing under the railroad into the country, he wanted to return home. On the opposite side

of the track was a highway running back to the village, but it does not definitely appear how far it was from the track. However, Leo got upon the railroad track, the same being unfenced, and, still leading his dogs, and followed by his brother, was walking between the rails toward the village, but, seeing a train approach, he stepped off the track, at the same time releasing his dogs, who ran home. It was a freight train, and when about half of it had passed him he stepped into a path running along close to the ends of the ties, and, as he says, commenced to run, trying to see if he could keep up with the train. After running a short distance, he says, his foot struck against the end of a tie, and he fell, and that in some way his foot was caught beneath the wheels, causing the injuries sued for.

According to the record and the child's own testimony he had lived in Russell with his parents for about three years. Their home was not very far from the depot, in plain sight of the railroad track and passing trains. During those three years he had attended school, pursuing the ordinary studies, such as reading, writing, spelling and arithmetic. So far as appears, he was a boy of average intelligence, accustomed to go about by himself, and frequently having the charge of a younger brother; in the habit of going into the woods on hunting expeditions, with dogs, for the purpose of catching rabbits. He knew the nature of fences, including those of barbed-wire, and had had experience in crawling through and under them. He had been warned by his father of the danger of railroad trains, and cautioned to "keep away from the cars." Defendant admits the lack of a fence along the track where the boy approached it. Upon this state of facts, the trial court submitted to the jury two questions: First, whether the absence of the statutory fence was the proximate cause of the injury; second, whether the boy was guilty of contributory negligence. And we are asked to consider these two propositions as questions of law upon the admitted facts.

In the case of Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, 71 N. W. 20, it was held that the statute requiring railway companies to fence their roads was not exclusively designed to prevent domestic animals from straying upon their tracks, but was applicable

in cases where young children, non sui juris, stray upon tracks and receive injuries in consequence of the failure to construct a fence.

In the opinion (page 219) we find the following language: "If, as is conceded, it was designed to prevent dumb beasts from straying upon the track, how can we assume that it was not also designed to prevent infants, who are equally irresponsible, from straying there? As has been said, in one case a fence may be a very formidable obstruction to a child's going upon a railroad company's right of way; it may prevent his going there entirely; and, if it would, we do not think we have any right to say that his protection was not within the purview of the statute. In view of the kind of fence which the statute permits to be built, it may be in most cases a question whether the existence of such a fence would have prevented the child from straying upon the track, and hence whether the failure of the railway company to build it was the proximate cause of the injury. But that is a matter of proof on the trial."

While the court there held the statute to include human beings, it is evident that in so extending its meaning it accepted as within its provisions only those who by immature age and lack of judgment might, in point of irresponsibility, be classed with the dumb beasts.

So that in determining the question of whether or not the absence of the fence in this case was the proximate cause of the injury the test is: Had the statutory fence existed, would it probably have prevented this boy from getting upon defendant's track? His movements are not to be determined alone by his age, for it is a matter of common knowledge that some children have more alertness at four or five than others at eight or ten years of age. But the actions of this boy are to be judged by his age and powers of discretion as disclosed by the record. It does not appear that he was straying away from home, without any fixed purpose governing his actions. He was not running about here and there, as fancy dictated, but had planned a trip into the country for a specific purpose, and he had a certain definite route in mind both in going and returning. According to his own statement, he returned by the railroad track because it was the shorter and better

way back to the village. Can it be said, then, that this boy, guid-ing his movements by an intelligently planned purpose, was with-in the class of infants contemplated? The fence which, under the law, defendant was permitted to build, might consist of two barbed wires and one smooth wire; the top wires to be not more than fifty-two inches nor less than forty-eight inches high, and the bottom wire to be not less than sixteen inches from the ground. Or it might be made of four smooth wires, the top wire to be not more than fifty-six inches nor less than forty-eight inches high, and the bottom wire not less than sixteen nor more than twenty inches from the ground. If it was the boy's premeditated purpose to return to the village by the shorter and better route along the railroad track, a fence of this character would offer very little, if any, obstruction to him. Accustomed to rely upon himself, knowing the nature of such fence, acting upon his own judgment, he would either crawl through or under it.

Again, it seems very clear to us that the boy was guilty of contributory negligence. In the first place, if he was sui juris, he was a trespasser in being upon the tracks; and it appears from what has been said in reference to his education and general in-telligence that he was acting as a reasonable being, and knew what he was about, when he went upon defendant's track. It is no answer to say that he did what many other boys would have done under similar circumstances. Nor is it any answer to say that he did not expect or anticipate any accident would befall him when running along beside the train. Such consequences are never anticipated by people who take risks. The fact that the boy acted in a thoughtless or careless manner in running beside the track in an endeavor to keep up with the train is not evidence sufficient to show that he was non sui juris.

In this respect we do not think this action differs substantially from that of Twist v. Winona & St. P. R. Co., 39 Minn. 164, 39 N. W. 402, where a boy of ten years and four months of age was injured by having his foot caught in a turntable. It was said in that case that the fact that a child may not have the mature judgment of an adult will not excuse him from exercising the degree of judgment and discretion which he possesses, or for

disregarding the warnings and orders of his seniors, and heedlessly rushing into known danger; and that, while the boy may not have realized the danger as fully as an adult, yet he knew that he had no right to go upon the turntable; that his father had warned him it was dangerous, and he himself knew it to be so.

The opinion closes with this language: "While we are not disposed to adopt a severe rule by which to judge the conduct of childhood, yet such conduct on part of an intelligent boy of nearly ten and a half years amounts to contributory negligence, and cannot be excused on the plea of childish instincts."

So here the boy knew by his observations and experience, as well as by warning and admonition, that the railroad track was a dangerous place, and that trains were dangerous; and while it may have been a childish impulse that prompted him to run along beside the train in an attempt to keep up with it, that fact cannot excuse him from the responsibility of being in so perilous a place.

The order is reversed, and judgment ordered for defendant.