ALEX. MEHALEK v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

July 17, 1908.

Nos. 15,746—(181).

**Invitation to Ride on Train.**

An invitation by implication to ride on freight trains is not sustained by omission of the flagman and trainmen to pursue and drive away boys who attempt to steal a ride while the train is passing a street crossing.

[1] Reported in 117 N. W. 250.

**Omission to Construct Gates—Proximate Cause.**

> It conclusively appears from the evidence that the omission by respondent company to construct gates at a street crossing in accordance with the requirements of a city ordinance was not the proximate cause of the injury to appellant's son, an intelligent boy, nine years eight months old, who crossed over the tracks at the street crossing for the express purpose of catching and riding upon a passing freight train.

Action in the district court for Hennepin county by the father of John Mehalek, a minor, to recover $8,500 for personal injuries alleged to have been sustained by his son on account of the negligence of defendant's flagman in allowing the boy to board a train. Two actions were originally brought, one on behalf of the father and one on behalf of the boy. They were consolidated and tried as one action by stipulation of the parties. This case was tried before John Day Smith, J., and a jury which rendered a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*H. E. Fryberger,* for appellant.

*Alfred H. Bright,* for respondent.

LEWIS, J.

Appellant maintained several railroad tracks at its crossing at Twenty-Fifth Avenue Northeast, Minneapolis, about two blocks from the Schiller public school. The crossing was not furnished with safety gates, and the right of way was not inclosed with a fence; but a flagman was stationed at the crossing for the purpose of warning the public of approaching trains. For many years respondent company had operated a certain freight train, which reached this point every day about the time school was dismissed, four o'clock p. m. On May 3, 1907, John Mehalek, in company with another little boy, went from the school to the crossing, passed the flagman, and went over to the other side of the track just before the train arrived. The train consisted of about thirty five or forty freight cars, and according to the boy's testimony, as the last car came along he started to run along beside it, about a foot and a half from it, for the purpose of catching hold of the ladder on the car, when he stumbled and fell forward, striking his left hand against the car, and was whirled around so that his left leg was carried under the wheel and run over below the knee.

105 M.—9

Appellant seems to claim negligence on the part of the company on the ground that the flagman was incompetent for the duties which it was necessary for him to perform at that crossing, and that a competent flagman would have been able to prevent the boys from getting on the train. Another suggestion, as legal ground for negligence, is that by not preventing the boys from boarding and riding this train for a number of years the company held out an invitation to them to do so, and therefore owed them the duty of so regulating the speed of the train at its crossing as to lessen the danger of accidents, and that upon this occasion the train was run at an unusually high speed.

We find no evidence in the record to found any legal basis for negligence on these grounds. It does not appear that it was the duty of the flagman to follow the boys and see that they did not get on the train, and it is very apparent from the record that it was the practice of all the boys, including appellant's son, to cross over the tracks, get on the opposite side of the flagman, and board the train in such manner as to avoid observation, not only by him, but by the trainmen. There is no evidence in the case tending to show that the trainmen held out any inducements to the boys, or ever invited them to get on the train and ride. The mere fact that they were not driven off on every occasion is not sufficient to imply an invitation or license to ride. The trainmen were occupied with their duties, and could not leave their respective places to chase boys, and the train could not be stopped for the purpose of getting rid of them.

There is no evidence that respondent was negligent in maintaining an unblocked frog, or a hole in the roadbed. The track at the crossing was under repair at that time; but, if the then condition of the street had anything to do with the boy's fall, it does not appear that the company was responsible. Where a child of immature years wanders away, and without any particular object in mind, inadvertently goes on a railroad track, it may be that the intervention of a fence or gate would have been sufficient to divert him in some other direction. This is not such a case. According to the undisputed evidence, appellant's son was a nine year old schoolboy, of more than ordinary intelligence, lived only a block from the Twenty-Fifth avenue crossing, and his only object in going on the crossing was for the purpose and with the intention of catching on the train and getting a ride. He and other boys

had persistently followed this course for three or four years. It is idle to say that he did not know it was dangerous to attempt to ride on the train, or that he did not know it was wrong to do so. Although he testified to that effect, his very conduct in the manner of crossing the tracks and getting on the train indicates that he knew he had no right to do so.

The purpose of maintaining gates at such crossing is to give warning of approaching trains, not to bar off persistent trespassers; and this boy had all the warning of the dangers which would have been given by the presence of the gates. The absence of the fence has no bearing on the case, and if the gates had been in place they would only have been lowered at the time of approaching trains, and the boys could easily have passed across before it was necessary to drop the gates, and then waited for the train, or they could easily have dodged the gateman.

We consider the case controlled by Fezler v. Willmar & S. F. Ry. Co., 85 Minn. 252, 88 N. W. 746, where the facts are very similar. It is distinguished from Mattes v. Great Northern Ry. Co., 95 Minn. 386, 104 N. W. 234; Id., 100 Minn. 34, 110 N. W. 98, in the essential feature that in that case the boys were sent out in an open common to herd cattle, and thoughtlessly wandered over the track and took shelter under a standing car, and the younger boy, six and one half years old, was killed. In this case the boy deliberately and persistently approached the train with the fixed purpose of stealing a ride, and he was almost ten years old. The case differs from Hayes v. Michigan Cent. R. Co., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410, in the same particular. There the boy was between eight and nine years old, and deaf and dumb, and had gone on the tracks under the influence of a childish curiosity to follow a procession.

We agree with the trial court that there is no evidence to indicate that any act of respondent was the proximate cause of the accident, and it is not necessary to consider specially the question of contributory negligence.

Affirmed.

ELLIOTT, J. (dissenting).

I am unable to agree with the conclusion reached by the court, and therefore dissent.