# MILO SPENCER v. MANKATO MILL WORKS COMPANY.[1]

June 6, 1930.

No. 27,866.

[1]Reported in 231 N. W. 202.

510

*S. B. Wilson, Jr.* for appellant.
*C. A. Johnson,* for respondent.

STONE, J.

In this action growing out of an automobile collision plaintiff had a verdict, and defendant appeals from the order denying his alternative motion for judgment or a new trial.

Main street of Lake Crystal runs not quite due north and just beyond the village edge crosses a railroad at an acute angle. Trunk highway No. 16 is coincidental with Main street until just before the railroad is reached, when it turns on an angle of about 70 degrees, not abruptly but with an easy curve, to the east. The highway is graded and graveled in standard fashion. The traveled portion of Main street as it leaves the highway narrows appreciably. The collision was between an open Chevrolet touring car driven by plaintiff and a light motor truck belonging to defendant and driven by one Anderson, its employe. Plaintiff was going northerly on Main street and intended to and attempted to continue on across the railroad. Defendant's truck was coming from the east on highway No. 16. The collision occurred just after it got onto Main street and was turning south to continue on into Lake Crystal. Without suggesting that the speed might not have been excessive under the circumstances, one can hardly come to the conclusion from the record that either driver was traveling at a reckless rate. A disinterested witness says in substance that both were traveling at a moderate rate. Plaintiff, coming north on Main street on the right side, was close to the middle of the road. It appears from his own testimony and that of a driver of a bus that was following just behind that he looked intently to the left, apparently to see whether a train

was approaching. Stop signs made it his duty to stop before going onto the railroad crossing. He says he looked to the right for traffic approaching from that direction on the trunk highway and that he did not see defendant's truck until the moment of the collision. The driver of the bus, which probably was anywhere from 50 to 100 feet behind plaintiff, had no trouble in discovering the truck "as soon as it came in sight" and at a distance which he estimates at from 60 to 70 feet easterly from the point of collision. Trees border the east side of the highway at the curve and obstruct the vision of drivers approaching from either direction. But at the worst, according to the plat in evidence, there is a clear view of at least 100 feet, without additional allowance for possible vision over the lower obstructions nearest the edge of the highway.

The road was a bit slippery as the result of a recent rain. Defendant's driver said that in consequence he was keeping as far as possible to the right so that there would be no possibility of the long bus skidding into him. He assumed that plaintiff would continue on highway No. 16 and so pass to his left. Instead, still following his testimony, plaintiff "cut" directly in front of him, and the collision followed. It was practically a head-on affair, the right front spring of the truck hitting the number plate and piercing the radiator of plaintiff's car. That important detail stands without contradiction. The right front headlight of plaintiff's car disappeared in the collision, but the one on the left seems to have remained in place.

It was broad daylight. According to the elevations on the plat, highway No. 16 joins Main street on an incline to the west and south of approximately two per cent. The ordinary statutory rules covering the operation of automobiles at intersections apply. The verdict establishes the negligence of defendant's driver. Plaintiff had the right to assume that he would not be negligent. But he did not have the right, from the standpoint of the requirements of due care, to continue on across highway No. 16 without some precaution to observe what was approaching down that road from his right. He says he looked to the right but did not see anything, not even de-

fendant's rather obvious truck, until just the moment before it hit him. That means either that he looked to the right so far back down the road on which he was approaching that it was useless to look or that he did not look at all. Assuredly, if he had looked to his right just before he crossed the middle line of the highway, to continue his northerly course on Main street, he would have discovered the approaching truck in time to avoid the collision.

■ There is just one thing that prevents plaintiff's being charged with contributory negligence as matter of law. Main street in leaving trunk highway No. 16 swerves slightly to the west and goes "across the line of travel" of vehicles approaching on the highway from the east. Plaintiff testifies, although much contradicted, particularly by the driver of the bus which was just behind him, that just before he left the right side of the highway to continue north on Main street he held out his left hand as a signal to traffic behind him. He did not know that anybody was coming from either his front or his right. But his hand, if extended, was a signal notwithstanding, within the requirements of 1 Mason, 1927, § 2720-18(b) which requires that "the driver of a vehicle * * * approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle * * * provided the driver of the vehicle turning to the left has given a plainly visible signal of intention to turn." Without mooting the question whether Main street can be considered literally as turning to the left where it parts company with the trunk highway, it is plain, we think, that the situation is within its spirit and plain intention and therefore governed by the statute just quoted. On the evidence it was a fact issue whether plaintiff was in the intersection ahead of defendant's truck. If he was and gave the signal which he said he did, it was the duty of the driver of the truck to yield him the right of way.

■ The jury came in for additional instructions and asked particularly whether "by law" plaintiff could

"be compelled to put out his hand or would or could he leave that highway without * * * signaling he was leaving the highway, * * * would it be necessary for him to put out his hand when he was leaving the highway, driving in the same direction, driving straight the way he was going?"

The court responded thus:

"I would say in driving straight ahead and leaving this highway that he was under no obligation to give any. signal to either any vehicle following him or any vehicle that was approaching" from his right on the highway.

That instruction we think was error. At best the question propounded was one of fact. Without the statute the question would remain whether due care required a signal as well for vehicles approaching as for those following. But for the reason already indicated, where a driver is about to leave a main traveled highway in such fashion that he must proceed "across the line of travel" of any vehicle approaching from his right, the statute should be construed as conditioning his right of first passage upon the giving of a "plainly visible signal" of his intention.

■ One phase of the argument requires further comment. The plat in evidence was offered as one prepared by a competent civil engineer. It appears to have been drawn to scale. Yet it is now criticized as inaccurate and unreliable by counsel for plaintiff, upon whose behalf it was submitted. We are asked to disregard it. We have not done so. Where one is required to make the evidence understandable, the duty certainly rests upon the litigant having the burden of proof to prepare a plat or diagram which in every essential detail is dependable. The duty upon counsel to simplify and expedite the trial in every reasonable way is not performed when they go to trial upon plats which are incomplete or inaccurate. Where, as here, a plat drawn by a competent draftsman to scale has been offered in evidence, the fact that it is offered and received subject to correction will not justify any suggestion later that it is not to be made the basis for decision unless it has been

corrected or its error demonstrated. In this case there was no correction, except that counsel seem to have agreed that the plat as originally drawn did not correctly locate the railroad crossing.

There must be a new trial of all the issues.

Order reversed.

WILSON, C. J. did not participate in the consideration or decision of this case.

[1]Reported in 231 N. W. 204.