CHARLES C. ARNAO v. MINNEAPOLIS & ST. PAUL
SUBURBAN RAILROAD COMPANY AND ANOTHER.
YOLANDA RUTH ARNAO v. SAME.[1]

February 23, 1935.

No. 30,017.

*Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough,* and *Nathan A. Cobb,* for appellants.

*Ralph T. Boardman* and *John F. Dulebohn,* for respondents.

HOLT, JUSTICE.

The actions, tried together, resulted in verdicts directed in favor of the defendants. Plaintiffs appeal from the order denying the motion for a new trial in each case.

[1]Reported in 259 N. W. 12.

The actions grow out of the injuries received by plaintiff Yolanda Ruth, the little daughter of plaintiff Charles C. Arnao, who, when about 26 months of age, on December 28, 1930, at 5:16 p. m. was struck by a street car of defendant, she having strayed onto the right of way of defendant, about a mile west of the westerly limits of the city of Minneapolis. Defendant owns a private right of way between the westerly city limits of Minneapolis and Hopkins. It is 100 feet wide; about the center thereof are double tracks over which defendant operates its ordinary street cars. Between the two cities the right of way is fenced and cattle guards maintained where roads and streets cross the right of way on grade. It appears that Mr. Arnao lives about a block and a half southwesterly from where Mackey avenue abuts the southerly right of way. Around five o'clock in the afternoon of December 28, 1930, Yolanda was outside her home, with her two brothers, 6 and 11 years old, they being charged with her care. About 15 or 16 minutes after five o'clock she was missed, and as the hunt started defendant's car, coming from Hopkins, was observed to have stopped short of a proper stop for Mackey avenue passengers. Defendant Obert, the motorman, testified that a stop had been made at Brookside a quarter of a mile west of Mackey avenue; that after such stop the car attained a speed of about 35 miles an hour; that the headlight was lit; that the track was straight for more than 250 feet before reaching Mackey avenue; that he was looking ahead; that there were patches of snow and it was dusk; that he noticed an object between the rails when about 120 feet from it; that he could not tell what it was until he saw the head turn; that the child was either sitting down or was on her knees; that the pink suit of the child looked much like a patch of snow in the growing darkness; that the moment he noticed the object had life he stopped the quickest way he knew, but that the car passed over the child and about 25 feet farther. At the time of the trial the child was five years old and able to attend school. She was seriously injured; and the father incurred considerable expense for doctors' services and hospital care of the child. These two actions are for damages for the injuries suffered by the child and for the expenses

incurred by the father to relieve and cure such injuries. The complaint alleged failure to fence the Mackey crossing as the cause of the child's injuries, and also alleged wilful negligence of Obert, the motorman, in not stopping the car before it struck the child.

We have no hesitancy in approving the action of the learned trial court in holding that no actionable negligence was proved against the defendants because of any acts or omission of the motorman. His testimony is uncontradicted that as soon as he realized that the object he noticed ahead was a child he used all the means he deemed most efficient to avoid striking her. The human impulse so to do is so strong that experiments under varying conditions and calculations and measurements made afterwards should not avail to overthrow the straightforward, uncontradicted testimony of the motorman, who alone noticed the peril of the child and tried to prevent injury to it.

But we are also of the opinion that our fencing statute is applicable to defendant's right of way where this injury to the child took place, and that the statute was not complied with, and, because of such failure to fence, the jury could find from the evidence that the child strayed upon the right of way and to the position where injured through the opening in the south boundary fence where Mackey avenue abuts. Where opened streets and traveled highways cross the right of way on grade defendant maintains the usual fences and cattle guards. However, where Mackey avenue would cross, if opened to public travel, defendant has left a four and one-half foot gap or opening in the fence on either side of the right of way and maintains a four-foot walk of crushed rock, which on the south side connects with the sidewalk on the westerly side of Mackey avenue. Where this walk of crushed rock crosses the track it expands to the east into a platform of crushed rock about 25 feet long, extending some four or five feet beyond the outside rails of each track. These openings in the fences, the walk, and platform are for the accommodation of patrons of defendant who desire to leave or board cars at that point. Persons who desire to become passengers there are, by a posted sign, requested to give a timely signal to the approaching car. 1 Mason Minn. St. 1927, § 4744, obligating railroad companies to fence, reads:

"Every such company shall build and maintain on each side of all lines of road owned and operated by it, good and substantial fences, and shall build and maintain good and sufficient cattle guards at all road and street crossings and other openings, except at station and depot grounds, and other places which the necessary business of the road or public convenience requires to be open."

There is nothing in the evidence which would justify a finding that "the necessary business of the road or public convenience" required the right of way to be kept open at Mackey avenue. No reason appears from the evidence why the crushed pathway and platform could not be fenced and provided with cattle guards just the same as if Mackey avenue had been opened and used as a street across the right of way. The four-foot openings in the fence gave straying animals free access to all of defendant's right of way and tracks between the first grade crossing to the east and the first grade crossing to the west of Mackey avenue. A fence on both sides of the path of the crushed rock and on either side of the platform, with cattle guards protecting the ends of the latter, would give all the use either defendant or the public could make of a place to board or depart from defendant's cars. A mere inspection of the photographs and plats in the record shows that proper fencing and cattle guards will as feasibly and efficiently protect defendant's right of way at Mackey avenue as at Brookside or any other grade crossing, and that thereby no interest of defendant nor public convenience will suffer in the slightest. We are not now concerned with the adequacy of the fence or cattle guards. Here defendant has deliberately left openings in its right of way fences giving free access to the tracks which are not protected by cattle guards. On the face of this record defendant violated the statute above quoted (§ 4744). It is established law in this state that the statute is not only to prevent domestic animals from straying upon railroad tracks but also young children who are *non sui juris.* Rosse v. St. P. & D. Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591, 64 A. S. R. 472, where the decision in Fitzgerald v. St. P. M. & M. Ry. Co. 29 Minn. 336, 13 N. W. 168, 43

502

Am. R. 212, holding that the statute was not to prevent children *non sui juris* from straying upon railroad tracks, was expressly overruled. The interpretation placed on said § 4744 in the Rosse case has been adhered to ever since. Nickolson v. N. P. Ry. Co. 80 Minn. 508, 83 N. W. 454; Marengo v. G. N. Ry. Co. 84 Minn. 397, 87 N. W. 1117, 87 A. S. R. 369; Ellington v. G. N. Ry. Co. 96 Minn. 176, 104 N. W. 827; Mattes v. G. N. Ry. Co. 100 Minn. 34, 110 N. W. 98; Jensen v. C. M. & St. P. Ry. Co. 156 Minn. 218, 194 N. W. 620.

But defendant railway contends that the evidence fails to show that the child came through the opening in the fence, and hence there is no proof that noncompliance with the fencing statute caused the injury. True, Yolanda was 100 feet west of the Mackey avenue crossing between the rails of the eastbound track, but that she came through the opening in the fence and over the crushed rock path leading to the track was evidenced by her "kiddy car" found on the path between the opening and the rails. So there was proof tending to show that the failure to fence and maintain cattle guards to prevent access to the track where the little girl strayed caused her injuries.

We are of the opinion that it is patent that the Mackey avenue station does not come within the exception of § 4744; that it is not a place which the necessary business of the defendant company or public convenience requires to be kept open; that there is obviously no reason why that place may not just as readily and efficiently be protected with fence and cattle guard as is Brookside or any other grade crossing on defendant's railroad; that there was evidence to go to the jury as to the failure of the defendant railroad to comply with the statute hereinbefore quoted being the cause of the little girl's injuries. The court erred in directing a verdict in favor of the defendant railroad company.

The order is reversed.