DAVID A. STRAND v. GREAT NORTHERN RAILWAY
COMPANY AND MINNEAPOLIS, ST. PAUL & SAULT
STE. MARIE RAILWAY COMPANY.[1]

February 2, 1951.

Nos. 35,223, 35,224.

[1]Reported in 46 N. W. (2d) 266.

See, Strand v. G. N. Ry. Co. 233 Minn. 546, 46 N. W. (2d) 275.

*Edwin C. Matthias, J. H. Mulally,* and *Smith & Nolan,* for appellant Great Northern Railway Company.

*James L. Hetland* and *Fordyce W. Crouch,* for appellant Minneapolis, St. Paul & Sault Ste. Marie Railway Company.

*Herbert E. Olson,* for respondent.

CHRISTIANSON, JUSTICE.

This is an action by an infant plaintiff against two railroad

companies, the Great Northern and the so-called Soo Line.[2] Plaintiff seeks to recover for injuries sustained by him when he crossed the right of way of the Soo Line and entered the right of way of the Great Northern, where a Great Northern railroad car ran over his right foot and leg. In the court below, plaintiff secured a verdict of $50,000 against both defendants. From separate orders denying their motions for judgment notwithstanding the verdict or a new trial, both defendants appeal.

Viewing the evidence most favorable to the verdict, as we must,[3] the evidence was sufficient to justify the jury in finding the following facts:

This accident occurred on the Great Northern tracks in the outskirts of Bemidji, Minnesota, where the Great Northern tracks and right of way are immediately south of and parallel with the right of way and tracks of the Soo Line. Both lines run in a generally east-west direction. There was no fence of any kind on the common boundary line between the two rights of way. At all points here material, each right of way is 100 feet wide and has a single track in the center thereof.

About 4:30 p. m. on September 22, 1947, plaintiff, David A. Strand, then age 7½, together with Billy Adams, age 7, and Jimmy Adams, age 9, went to the home of Jimmy Odegard, age 10, son of the section foreman for the Soo Line. The boys then went to a hut built of old, discarded ties located on the south end of the Soo Line right of way. They stopped at the tie hut for only a few minutes and then entered the Soo Line right of way at a point where the fence was down a short distance from the tie hut. They then proceeded along the right of way in an easterly direction to a little depression surrounded by jack pines, which they called Twin Hill Hut. This hut was located on a hill

---

[2]"Great Northern" is used herein to designate the Great Northern Railway Company, and "Soo Line" is used to designate the Minneapolis, St. Paul & Sault Ste. Marie Railway Company.

[3]See, Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213, and cases cited.

on the south side of the Soo Line right of way and approximately three-fourths of a mile east of where they entered the Soo Line right of way.

The boys remained only five or ten minutes at the Twin Hill Hut and then started homeward, walking between the tracks of the two railroad companies, picking berries as they went. When they reached a point almost adjacent to and just south of the Soo Line section foreman's home, a Great Northern train approached from the west. After five or ten cars had passed them, the other boys heard plaintiff scream and found him on the ground near the Great Northern track with the lower portion of his right leg badly injured. Only the bony skeleton of his foot remained. The shoe and other portions of the foot were missing. Plaintiff's injuries required amputation of the right leg 5½ inches below the knee.

There is a conflict in the evidence as to how the accident actually occurred. According to plaintiff's testimony, the boys were picking and eating berries on the Soo Line right of way when a Great Northern freight train approached going toward Twin Hill Hut. In his own words, the boys "was going to catch a ride out to Twin Hill Hut," so we ran across the Soo Line tracks and "I got hold of the bar * * * my foot slipped off * * * and it went in between them two wheels and it ran over my toes and tore all the skin off."

The Adams boys did not say that they intended to catch a ride, but that they were picking berries on the right of way, and that they were on their way home.

On the basis of these facts and on the basis of numerous alleged errors in the trial court's instructions to the jury, both defendants assign as error the denial of their motions for judgment notwithstanding the verdict or a new trial. They also claim the right to a new trial because of improper argument to the jury made by plaintiff's counsel. We consider it unnecessary to pass

upon defendants' objections to the court's charge to the jury, except insofar as they relate directly to the issues hereinafter stated.

The case was submitted to the jury on the question whether the failure of defendants to fence their rights of way, as required by M. S. A. 219.31 to 219.33 constituted actionable negligence under the circumstances herein described. As to both defendants, this appeal raises two main issues:

(1) Does it appear as a matter of law either that plaintiff was not within the class of persons protected by §§ 219.31 to 219.33 or that his injury was not the type this statute was enacted to prevent?

(2) In any event, does it appear as a matter of law that defendants' violation of this statute did not proximately cause plaintiff's injury?

The question whether plaintiff was within the protection of §§ 219.31 to 219.33 applies equally to both defendants and will therefore be discussed first.

■ A very early case in this state[4] held that G. S. 1894, § 2695,[5] afforded protection to infants *non sui juris* who strayed upon railroad tracks. Succeeding cases interpreting this statute and its successor statutes have unanimously endorsed this holding,[6] but have been very hazy in defining the class of infants who fall within the protection of the statute. It is unfortunate

---

[4]See, Rosse v. St. P. & D. Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591.

[5]Now incorporated in M. S. A. 219.33.

[6]Nickolson v. N. P. Ry. Co. 80 Minn. 508, 83 N. W. 454; Marengo v. G. N. Ry. Co. 84 Minn. 397, 87 N. W. 1117; Ellington v. G. N. Ry. Co. 96 Minn. 176, 104 N. W. 827; Mattes v. G. N. Ry. Co. 100 Minn. 34, 110 N. W. 98; Jensen v. C. M. & St. P. Ry. Co. 156 Minn. 218, 194 N. W. 620; Arnao v. Minneapolis & St. Paul Sub. R. Co. 193 Minn. 498, 259 N. W. 12.

that the term *"non sui juris"*[7] was ever used to define the class of infants within the protection of the statute. That term was first used in this context by Mr. Justice Mitchell[8] when he cited Fitzgerald v. St. Paul, Minneapolis & Manitoba Ry. Co. 29 Minn. 336, 13 N. W. 168, as holding that the fencing statutes were inapplicable to infants, although *non sui juris.*[9] However, in reversing that case, the court's opinion avoided the label *"non sui juris"* and described the class of infants to be protected under the statute as follows (68 Minn. 219, 71 N. W. 21):

"* * * If, as is conceded, it [the fencing statute] was designed to prevent dumb beasts from straying upon the track, how can we assume that it was not also designed to prevent infants, *who are equally irresponsible,* from straying there?" (Italics supplied.)[10]

Mr. Justice Mitchell further limited the class of infants within the protection of the fencing statute when he said (68 Minn. 219, 71 N. W. 21):

"* * * In view of the kind of fence which the statute permits to be built, it may be in most cases a question whether the existence of such a fence would have prevented the child from straying upon the track, and hence whether the failure of the railway company to build it was the proximate cause of the injury."

---

[7]Clearly, the term was used in a more restricted sense than is most commonly employed, *i. e.,* to define a person who is under legal disability. Black's Law Dictionary (3 ed.) defines *"sui juris"* as follows: "Of his own right; possessing full social and civil rights; not under any legal disability, or the power of another, or guardianship." *"Non sui juris"* is defined as "The opposite of *sui juris."*

[8]See, Rosse v. St. P. & D. Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591.

[9]The court in the Fitzgerald case used the term *"non sui juris"* only in holding that the negligence of a parent could be imputed to a child who was *non sui juris* and himself incapable of negligence.

[10]For holdings to the same effect, see Fezler v. Willmar & Sioux Falls Ry. Co. 85 Minn. 252, 88 N. W. 746, and Schreiner v. G. N. Ry. Co. 86 Minn. 245, 90 N. W. 400, 58 L. R. A. 75.

Although phrased in terms of proximate cause, this statement clearly indicates that the statute is only designed to protect children who might be deterred by a legal fence.

With the exception of one case,[11] all the other cases involving injuries to children because of failure to fence have by-passed the question whether the child was *non sui juris*. These cases have all turned primarily upon the question whether the injured child was of such age and discretion that the fence would have deterred him from entering the right of way.

It thus appears that a child is not within the class of persons protected by this statute unless in point of irresponsibility he can be classed with domestic animals. Applying a slightly different test, a child is not within the protection of the statute if he is possessed of sufficient mentality and ability so that a fence of the kind required by the statute would not have deterred him from going onto the railroad right of way. The latter test seems to be the one most often applied.

It could be argued with considerable force that the wording of the present statute[12] would have supported a holding that any person, or at least any child, could come within the protection of the statute even though more intelligent than domestic animals. Certainly it was not necessary, even at the time the Rosse case, 68 Minn. 216, 71 N. W. 20, was decided, to analogize children to domestic animals in order to bring them within the language of our fencing statute. At that time there was already a section in

[11]In Arnao v. Minneapolis & St. Paul Sub. R. Co. 193 Minn. 498, 259 N. W. 12, the court assumed that a 26-month-old child was *non sui juris* and merely applied the *non sui juris* test as established law.

[12]M. S. A. 219.33 provides:

"Any railroad company operating a line of railroad in this state, which has failed or neglected to fence the road * * *, shall be liable for all damages sustained *by any person* in consequence of such failure or neglect. * * * Failure to serve such notice shall not relieve such company from liability for damages for *injuries to persons* or domestic animals or other property, resulting from failure to fence its road." (Italics supplied.)

our statute[13] expressly making railroads liable "for all damages sustained by any person" because of a railroad's failure to fence its right of way. This section was entirely separate from the section imposing a duty to fence against domestic animals.[14] See, Frisch v. C. G. W. Ry. Co. 95 Minn. 398, 104 N. W. 228; Bear v. C. G. W. Ry. Co. (8 Cir.) 141 F. 25. Minnesota is therefore not to be classed with those states which have enacted statutes imposing a duty to fence railroad rights of way only against cattle,[15] and cases from those jurisdictions are not in point for purposes of construing our statute. However, cases from other jurisdictions having express provisions in their fencing statutes for protection of persons[16] are not too helpful, because they all assume that the statute applies to persons and they deny relief only to those whose injuries were not proximately caused by the failure to fence as required by law. Examination of those cases only serves to prove the truth of Mr. Justice Mitchell's statement that "As no two statutes on the subject are altogether alike, cases from other jurisdictions are not exactly in point, * * *."[17]

We can best determine the proper meaning of our own statutes by looking to its purpose. Obviously, the only purpose of our statute requiring railroads to fence their rights of way is to protect those who would be deterred from entering the right of way by fences of the kind specified in the statute.[18] If railroads are to be held liable for injuries to young children even though

[13]G. S. 1894, § 2695 (now incorporated in M. S. A. 219.33).

[14]G. S. 1894, § 2693 (now incorporated in M. S. A. 219.32).

[15]For cases interpreting such statutes in New Hampshire, Ohio, Indiana, and Missouri, see 16 L. R. A. (N. S.) 1103, note. For cases interpreting such statutes in Illinois, Maine, and Montana, see note in 18 N. C. C. A. (Negligence Comp. Cas. Ann.) 766-768.

[16]See cases collected in note, 18 N. C. C. A. (Negligence Comp. Cas. Ann.) 768-775; note, 16 L. R. A. (N. S.) 1103; note, 25 L. R. A. 784; 3 Elliott, Railroads (3 ed.) § 1705, p. 646.

[17]Rosse v. St. P. & D. Ry. Co. 68 Minn. 216, 219, 71 N. W. 20, 21, 37 L. R. A. 591.

[18]See, M. S. A. 344.02.

a legal fence would not have stopped them from entering the right of way, then the liability should be placed on some grounds other than the failure to erect a legal fence. Since the purpose of the statute is not to protect *all* children, but rather only those children who might be deterred by a legal fence, the legal tests of when a child is still *non sui juris* are of little help as a standard for determining what class of infants is protected by this statute. The question in these cases is not whether a child is old enough to be capable of contributory negligence. Nothing but confusion will result from drawing on the definitions of *non sui juris* to be found in those cases.[19] In each case there is a simple question of fact as to whether or not a legal fence would probably have prevented a child of the plaintiff's age, ability, intelligence, and discretion from entering the railroad right of way. Cf. Jeanette v. M. St. P. & S. S. M. Ry. Co. 130 Minn. 513, 153 N. W. 1086. In the present case, this question was presented to the jury, and it found in favor of plaintiff. We cannot hold as a matter of law that the evidence in the case was insufficient to support their finding. David was only 7½ years old at the time of the accident. He had had only one year of schooling. His intelligence quotient is only about 95. Between 90 and 110 is considered *average* intelligence. Even at the time of trial, when he was nine, David could not tell the difference between forenoon and afternoon. He did not know directions. He did not know what a semaphore was, and he called a motor patrol car "a little putt-putt." He could not even remember whether or not he did any work on the tie hut on the day of the accident. The jury had ample opportunity to observe David throughout the trial. They heard his testimony and watched his behavior. We do not consider it proper to substitute our judgment for theirs on the question whether David was so immature as to come within the class

---

[19]For notes showing the confusion in the cases which have attempted to define *non sui juris* as applied to the doctrine of contributory negligence of infants, see Annotations, 107 A. L. R. 4, 161, and 174 A. L. R. 1080, 1158.

of infants protected by this statute. We do not consider it necessary to distinguish in detail the cases[20] cited by defendants on this point. Each case must rest on its own facts, and the children involved in those cases differed materially in age, intelligence, experience, and education from the plaintiff in the case before us.

Assuming, then, that the jury could properly find that plaintiff was within the class of persons protected by the statute, we come to the further questions whether plaintiff's injury was of the type the statute was designed to prevent, and, if so, whether defendants' violation of the statute was the proximate cause of plaintiff's injury. As applied to Great Northern, it seems too obvious for discussion that plaintiff's injury was exactly the type of accident which this statute was designed to prevent. It is not so clear that Great Northern's failure to erect a right of way fence as required by statute was the proximate cause of plaintiff's injury. However, there is nothing in the record from which this court can say as a matter of law that a legal fence would not have deterred plaintiff from entering the Great Northern right of way, and hence that the failure to erect such a fence was not the proximate cause of his injury. Nor can we agree with Great Northern's contention that plaintiff's act of stepping onto the bar of the freight car constituted an independent, intervening force breaking the causal connection between the failure to fence and his resulting injury. If that were so, then it is difficult to imagine a case where failure to fence would be a proximate cause of injury to a child. In nearly all cases of this type, the child steps, runs, or climbs upon the cars, upon the track, or by some physical act places himself in such a position that he is injured by the train. The case of Paquin v. Wisconsin Cent. Ry. Co. 99 Minn. 170, 108 N. W. 882, did not hold that the act of the injured

---

[20]Fezler v. Willmar & Sioux Falls Ry. Co. 85 Minn. 252, 88 N. W. 746; Mehalek v. M. St. P. & S. S. M. Ry. Co 105 Minn. 128, 117 N. W. 250; Jeanette v. M. St. P. & S. S. M. Ry. Co. 130 Minn. 513, 153 N. W. 1086; Vaillant v. C. & N. W. Ry. Co. 163 Wis. 548, 158 N. W. 311.

child in getting onto the train was an independent intervening force. In that case, an act of other boys playing about the cars was held to be the independent intervening force. In the case before us, the act of the minor plaintiff in stepping upon the Great Northern train was not an independent intervening force. It was but another link in the causal chain between the failure to fence and the resulting injury. In the instant case, the question of proximate cause was one of fact for the jury to determine from all the evidence. Ellington v. G. N. Ry. Co. 96 Minn. 176, 104 N. W. 827; Mattes v. G. N. Ry. Co. 100 Minn. 34, 110 N. W. 98; Rosse v. St. P. & D. Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591. Accordingly, we hold that the failure of Great Northern to fence its right of way was negligence[21] and that a jury could find that such negligence was the proximate cause of plaintiff's injury.

■ The question remains whether the Soo Line may also be held liable to plaintiff because it failed to fence its right of way as required by law. In light of our decision in Frisch v. C. G. W. Ry. Co. 95 Minn. 398, 104 N. W. 228, and the decision of the United States circuit court of appeals in Bear v. C. G. W. Ry. Co. (8 Cir.) 141 F. 25, we believe that this question must be answered in the negative.

In the Bear case, the plaintiff sued for damages alleged to have been sustained when his horse crossed the Chicago Great Western's unfenced right of way directly onto the right of way of the Chicago & Northwestern Railway Company, where it was

---

[21]We find no merit in Great Northern's contention that violation of our fencing statute is only evidence of negligence. Although language to that effect was used in Nickolson v. N. P. Ry. Co. 80 Minn. 508, 512, 83 N. W. 454, 455, and in Ellington v. G. N. Ry. Co. 96 Minn. 176, 179, 104 N. W. 827, 828, neither case required a square holding to that effect. See, 19 Minn. L. Rev. 667, 687, and note 106. In the great majority of cases, this court has said that a defendant's violation of a statute of this kind is "negligence per se." See, 19 Minn. L. Rev. 686, 688, and cases cited in note 108.

104

killed by a Northwestern train. In affirming a directed verdict in favor of the Great Western, the court said (141 F. 27):

"* * * The enactment of the statute[22] was in view of the obvious and especial dangers incident to a railroad right of way and the moral duty of the owner to adopt reasonable precautions to guard against them. * * * The defendant's duty was in relation to the dangers *upon its own possessions*. The duty to exclude stock from an adjoining or a distant right of way was upon the company that owned it. * * * Each railroad company was required to exclude domestic animals from its own right of way, not from the right of way of other companies or from adjacent property." (Italics supplied.)

In the Frisch case, the plaintiff sought recovery of damages for a horse killed upon the tracks of the Chicago & Northwestern Railway Company and proved that the horse had gone onto the Great Western right of way and then directly from there onto the Northwestern right of way. There was no fence between the two railroad company properties. In reversing a judgment in favor of the plaintiff, this court said (95 Minn. 403, 104 N. W. 230):

"* * * the defendant in this case is not liable for the loss of the horse for two reasons: The horse was not killed by the defendant, nor on its right of way; and, further, the failure of the defendant to fence its right of way was not the proximate cause of the death of the horse, which was due proximately to the failure of the Northwestern Company to fence its road on the north side thereof. It is true the defendant was negligent in not fencing its road, but such negligence *was merely the occasion of the injury*. On the other hand, the failure of the Northwestern Company to inclose its road with a fence resulted in the horse getting upon its tracks, where he was killed by its train. This was an independent intervening cause, from which the loss resulted; hence it was the proximate cause thereof." (Italics supplied.)

---

[22] G. S. 1894, § 2693 (now incorporated in M. S. A. 219.32).

Plaintiff contends that these cases are not in point because they involved injury to a domestic animal and were not decided under the section of our fencing statute, which provides that a railroad "shall be liable for all damages sustained by any person in consequence of * * * failure or neglect [to fence its right of way]." Plaintiff maintains that by enacting this separate section to cover injuries to persons the legislature indicated its intention that liability in the case of immature children should be greater than in the case of domestic animals. As an abstract proposition, we can readily agree that the legislature might have intended to afford greater protection to human life than to the lives of domestic animals. But to read such an intention into the statute before us is to completely ignore the purpose for which the statute was enacted. Common sense tells us that railroad rights of way are not required to be fenced in order to keep people from leaving them and thereby coming in contact with known or unknown dangers beyond. The dangers which the legislature seeks to prevent are the dangers to be encountered *within* the property which the statute requires to be fenced. One railroad is not to be made the insurer for all adjoining landowners who maintain hazards on their own property. Much less is it to be made an insurer for an adjoining railroad which has an individual statutory duty to fence its own right of way. Conceding that the Soo Line was negligent in failing to fence its right of way, it was merely negligent in an abstract sense, because its failure to fence did not result in an injury on its right of way as contemplated by §§ 219.31 to 219.33. See, Frisch v. C. G. W. Ry. Co. and Bear v. C. G. W. Ry. Co. *supra;* Curran v. Chicago & Western Indiana R. Co. 289 Ill. 111, 124 N. E. 330; Hocking Valley Ry. Co. v. Phillips, 81 Ohio St. 453, 91 N. E. 118, 29 L. R. A. (N. S.) 573.

■ Despite the fact that we have found sufficient support in the evidence to sustain the jury's finding that Great Northern's negligence in failing to fence its right of way was the proximate cause of plaintiff's injury, we are nevertheless of the opinion that the Great Northern is entitled to a new trial because of the

trial court's refusal to give an instruction requested by defendants affecting the issue of proximate cause, and also because of the misleading and prejudicial remarks made by counsel for plaintiff in his closing argument to the jury.

In its charge to the jury, the trial court refused to instruct the jury that a single legal fence on the common boundary between Great Northern and the Soo Line would have been a sufficient compliance with the fencing statute. Instead, the jury was charged that the Soo Line was required to fence *each side* of its right of way and that Great Northern was also required to fence *each side* of its right of way. From the instructions given, the jury might have been led to believe that had both railroad companies complied with the fencing statute there would have been a double fence on the common boundary between the two rights of way. Although this court has never expressly decided whether our fencing statute requires adjoining railways to erect double fences on their common boundary, we are satisfied that neither the language nor the purpose of the statute requires it. Cf. Hovorka v. M. & St. L. Ry. Co. 31 Minn. 221, 17 N. W. 376, and Gould v. G. N. Ry. Co. 63 Minn. 37, 65 N. W. 125, 30 L. R. A. 590. Since the jury might have concluded that plaintiff would not have been deterred by one fence but that two fences back to back would have kept him from going onto Great Northern's right of way, we believe that Great Northern is entitled to have a new jury pass upon the question whether a legal fence would have deterred this child from entering its right of way.

■ It would serve no useful purpose to detail the instances in which counsel for plaintiff made both misleading and highly inflammatory arguments to the jury. Two illustrations will suffice. Because two railroads were involved, there was serious danger in this case that facts bearing on the negligence of one might influence the jury in determining the negligence of the other. Plaintiff's counsel invited such confusion, notably by making references to the tie hut and to Twin Hill Hut located upon the

Soo Line right of way and suggesting that the children were lured or invited onto the rights of way by these so-called attractive nuisances. This basis of liability was not even submitted to the jury, and, even if it had been, the maintenance of attractive nuisances[23] on the Soo Line would not have been a basis for holding Great Northern liable. Counsel's remarks suggesting liability on that basis were seriously prejudicial to Great Northern. Even more prejudicial were numerous remarks made by counsel for plaintiff which were of a nature likely to arouse the passion and prejudice of the jury. These remarks were particularly prejudicial because of the fact that this was a case in which passion and prejudice of the jury could easily be aroused. We are fully aware that the matter of granting a new trial on this ground rests largely in the discretion of the trial court, but where, as here, serious misconduct appeared and prejudice was shown, it was an abuse of discretion not to grant a new trial. Romann v. Bender, 184 Minn. 586, 239 N. W. 596; Anderson v. Hawthorn Fuel Co. 201 Minn. 580, 277 N. W. 259. It is apparent from the record that this case is close on the merits. The trial court did nothing to minimize the prejudicial effects of counsel's remarks. In all fairness, a new trial must be granted. This court has so often stated its reasons for granting a new trial because of counsel's misconduct that it seems unnecessary to repeat what was said in those cases. Cf. Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359; Rian v. Hegnauer, 210 Minn. 607, 299 N. W. 673; Anderson v. Hawthorn Fuel Co. *supra;* Krenik v. Westerman, 201 Minn. 255, 275 N. W. 849; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251; Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39; Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142; Smith v. G. N. Ry. Co. 133 Minn.

---

[23]The conventional attractive-nuisance doctrine has been discarded in this state and replaced by the rule stated in Restatement, Torts, § 339. See, Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 536, 261 N. W. 194, 196.

192, 158 N. W. 46; State v. Boice, 157 Minn. 374, 196 N. W. 483. See, Weber v. McCarthy, 214 Minn. 76, 80, 7 N. W. (2d) 681, 684.

In accordance with this opinion, the case is remanded to the trial court with directions that defendant Soo Line be granted judgment notwithstanding the verdict and that defendant Great Northern be granted a new trial.

So ordered.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.