JOSEPH EUGENE SNELSON v. G. W. WEBSTER AND
ANOTHER, TRUSTEES OF MINNEAPOLIS,
ST. PAUL & SAULT STE. MARIE
RAILWAY COMPANY.[1]

February 2, 1945.

No. 33,891.

[1]Reported in 17 N. W. (2d) 511.

*Bauers & Carlson,* for appellant.

*James L. Hetland, George A. Heisey, Paul J. McGough, Faegre & Benson,* and *John A. McEachron, Jr.,* for respondents.

MAGNEY, JUSTICE.

Verdict was directed for defendants. Plaintiff appeals from an order denying his motion for a new trial.

At the time of the accident, plaintiff was an athletic young man 18 years old, 5 feet 8½ inches tall, and weighing 165 pounds. He had graduated from high school and was attending N. Y. A. school at Glenwood, Minnesota. During the July 4, 1942, week end, he had hitchhiked to his home at Cloverton in Pine county, and, in the same manner, had reached Brooten, 16 miles from Glenwood, on his return trip. He was due back at school at four o'clock on July 6. Two companions, Milton Guion and Larry Ackert, accompanied him on his return trip. When they reached Brooten at about 2:30 or 2:45 o'clock in the afternoon of July 6, they were unable to catch a ride, so they proceeded to walk west on state highway No. 55. When they reached a point in this road about half a mile west of Brooten, where a county-line road branched off in a northerly direction and across the railroad track of defendants, they noticed a freight train pulling out from the station at Brooten and coming west toward them. Either plaintiff or Ackert suggested trying to catch a ride on this train. They proceeded to walk north on the county-line road and stopped about 15 to 25 feet from the track. The purpose of walking toward the track was to see if they could hitchhike a ride on the train. The railroad company had recently ballasted its roadbed, and loose gravel extended beyond the ends of the ties about three feet, except where traffic had packed it on the highway. The gravel was about three inches deep. The engine was just at the crossing when the boys stopped. They motioned to a man leaning out of the engine cab, as if thumbing a ride. He reached out his arm and pulled it toward his face several times. They then moved up to within approximately ten feet of the train to the east side of the road,

which was 20 feet wide at the crossing. The train was moving from 15 to 30 miles an hour. Plaintiff describes what happened as follows:

"Q. When he gave that motion what did you do, Joe?
"A. Well, on a sudden impulse I started toward the train.
"Q. How were you going?
"A. Well, at a slow run or a fast walk."

He ran or walked fast the width of the highway, probably 15 feet, and came toward the train at a 45-degree angle with the intention of boarding it on the wrong side.

"Q. * * * what next did you do?
"A. Well, I decided it would be better not to try to get on the train, so I tried to stop.
"Q. And when you tried to stop, what happened?
"A. My right foot went in the loose gravel right on the road part and sunk down in this gravel, and from the feelings of my foot I stepped on a large stone that rolled, and I slipped and fell into the train. * * * I tried to stop and my right foot went in this gravel and sank down. It felt like a rolling rock."

Plaintiff was then three or four feet from the rail and two feet from the cars themselves. At the time he stumbled or slipped, his arms were hanging down. He said he remembers putting up his hands and touching the side of the train to keep his head from hitting it. He did not reach for the grab iron and does not know whether he touched it or not. He had attempted to stop about six feet from the rail, that is, about four feet from the train. That day he was wearing oxford shoes with light soles. Up to the time his foot went down in the loose gravel, he had been on solid footing. As his mind was focused on the moving train, he paid no attention to the condition of the highway. The train consisted of more than 25 cars. Plaintiff came in contact with the east end of the fifth or sixth one, a gondola car. Plaintiff's body came to rest about eight or ten feet west of the highway. He suffered the loss of a leg.

Plaintiff's two companions did not attempt to catch the train. They were probably three or four feet behind him as he moved toward the train and stopped about ten feet from the cars, because the train was moving too fast for them to catch on to it, and they thought it would be dangerous to do so. When plaintiff was about five feet from the train, they shouted to him not to try to get on, as it was going too fast. He claims that he did not hear this warning. Guion, one of the companions and the only one present at the trial, was asked:

"Q. * * * what did he do?

"A. Well, he more or less seemed to stop, tried to make an attempt to stop, because he was running at an angle with the train, and in order to board the train, he would have to turn and run alongside of the train."

In directing a verdict, the trial court based its ruling chiefly on the ground of contributory negligence, but also stated that it was not convinced that plaintiff had proved negligence on the part of the defendants. If the testimony bearing on the question of contributory negligence, as we have detailed it, sustains the action of the trial court in directing a verdict on that ground, it of course becomes unnecessary to consider the question of defendants' alleged negligence.

Taking the facts in the light most favorable to plaintiff, the conclusion is inescapable that he was guilty of contributory negligence. It was his admitted intention to steal a ride on the fast-moving freight train. "On a sudden impulse," as he testified, he ran toward the train at a 45-degree angle, approaching it from the wrong side to board it. He paid no attention to the condition of his footing. His mind was focused entirely on the train. His oxford shoes with thin soles were unsafe for such a performance. He was dangerously close to the fast-moving train. When in this danger zone, about four feet from the train, he apparently appreciated his hazardous situation, that the train was moving too fast, and so tried to stop. His foot sank into the loose gravel and touched a stone,

as he claims. He stumbled into the train and received his injuries. The momentum carried him forward. His companions, who originally had the same intentions as plaintiff and who were running three or four feet behind him, stopped about ten feet from the cars because of the apparent danger and shouted a warning to plaintiff that the train was "going too fast * * * to catch onto it." Plaintiff stopped either because of the warning or because he appreciated the danger himself. He claims he did not hear the warning. The danger should have been as apparent to him as it was to his companions, who had the same intentions and were in the same circumstances as plaintiff.

In Powers v. C. M. & St. P. Ry. Co. 57 Minn. 332, 333, 59 N. W. 307, where a boy 13 years of age was killed in either stepping or falling off the steps of a caboose, this court said:

"* * * That, in getting on and off and standing on the step while the train was in rapid motion, he was doing perilous things, putting himself in a position of great danger, must be apparent to any one who has seen railroad trains moving, and must have been as well known to a boy of his age, intelligence, and experience, especially one who had been, as he had been, warned by his father not to get on and off trains when in motion, as to any one. * * * If the evidence that defendant's servant at times allowed boys to get on trains and ride to a particular switch, and there step off and adjust the switch, might make out that the boy was not a trespasser in getting on the caboose, yet that would not relieve him from the consequences of his own negligence. That his negligence was the immediate cause of his death is, on the evidence, beyond question."

In Fezler v. Willmar & Sioux Falls Ry. Co. 85 Minn. 252, 88 N. W. 746, a ten-year-old boy, who had entered upon defendant's right of way, was walking along the railroad tracks when a freight train approached. He stepped aside and ran alongside the train in a path at the end of the ties, trying to keep up with the train. He stubbed his foot against one of the ties, fell beneath the wheels,

and was injured. This court, in holding the boy guilty of contributory negligence, said (85 Minn. 256, 257, 88 N. W. 748):

"* * * It is no answer to say that he did what many other boys would have done under similar circumstances. Nor is it any answer to say that he did not expect or anticipate any accident would befall him when running along beside the train. Such consequences are never anticipated by people who take risks.

* * * * *

"So here the boy knew by his observations and experience, as well as by warning and admonition, that the railroad track was a dangerous place, and that trains were dangerous; and while it may have been a childish impulse that prompted him to run along beside the train in an attempt to keep up with it, that fact cannot excuse him from the responsibility of being in so perilous a place."

In Akerson v. G. N. Ry. Co. 158 Minn. 369, 376, 197 N. W. 842, 844, where plaintiff's intestate, in attempting to cross in front of a train, slipped and fell, this court, in commenting on the claimed contributory negligence of the decedent, used the following language:

"As was said by the late Chief Justice Brown * · * *, the deceased 'took the chances in attempting to cross ahead' of the oncoming train. In consequence, 'in the absence of reasonable explanation there was no question for the jury to pass upon.' * * * The chance of a slip, stumble or fall in front of a closely approaching passenger train is one of the things which a pedestrian cannot take, and at the same time be considered in the exercise of due care. It is not permitted to calculate so closely the chances of coming off victorious in such a race with a passenger train."

In the instant case, plaintiff placed himself in a perilous position while attempting to do a perilous thing. He took the chance of stumbling or falling in a zone of extreme danger. The dangerous situation should have been as apparent to him as it was to his two companions. The fact that he acted "on a sudden impulse," as he states, does not improve his position, and, as was said in Fezler v.

268

Willmar & Sioux Falls Ry. Co. 85 Minn. 252, 257, 88 N. W. 746, 748, *supra,* "that fact cannot excuse him from the responsibility of being in so perilous a place."

On the evidence, the trial court was right in directing a verdict for defendants.

Order affirmed.